[Crim. No. 1111. Second Appellate District, Division One.—October 20, 1924.]

## THE PEOPLE, Respondent, v. L. O. WILCOXIN, Appellant.

[1] CRIMINAL LAW — GRAND LARCENY — THEFT OF COW — EVIDENCE — VERDICT.—In this prosecution under an indictment charging defendant with the theft of a cow, the personal property of certain named persons, the facts in the case having been sufficient to justify the jury in believing that defendant killed the cow and thereafter skinned the carcass and appropriated to his own use the meat thereof, these facts were sufficient to prove an asportation of the live animal, and, therefore, they were sufficient to support the verdict finding defendant guilty of grand larceny.

[2] ID.—CORPUS DELICTI—EVIDENCE—ADMISSIONS.—In such prosecution, the evidence of the bullet hole in the hide of the cow on her left shoulder tended to prove that the cow met her death as the result of a gunshot wound, and this fact and the fact that the hide and head of the cow were found secreted in some bushes some distance from where the cow had been killed, the hide rolled up and the ears cut from the head, if believed by the jury, were sufficient to warrant the jury in finding that the cow had been stolen; and such evidence sufficiently established the *corpus delicti* to warrant the court in admitting in evidence the extra-judicial statements of the defendant.

[3] ID.—CONFESSIONS—CORPUS DELICTI—EVIDENCE.—To authorize the reception and consideration by the jury of evidence of an extra-judicial confession or admission of a defendant, the people need not establish the *corpus delicti* by proof of the clear and convincing character required to support a conviction—it being sufficient if there is some proof, or *prima facie* proof, or even slight proof, of the *corpus delicti*.

[4] ID. — OWNERSHIP OF COW — EVIDENCE — INSTRUCTIONS. — In such prosecution, the indictment having charged defendant with the

---

1. Killing animal and carrying away part of carcass as larceny of the animal, note, L. R. A. 1915E, 848.

Circumstances sufficient to show asportation, note, 29 L. R. A. (N. S.) 38.

Asportation which will support charge of larceny, note, 21 Ann. Cas. 856; 19 A. L. R. 724. See, also, 17 R. C. L. 22.

2. Proof of *corpus delicti* in larceny by circumstantial evidence, note, 16 Ann. Cas. 1214. See, also, 17 R. C. L. 64; 15 Cal Jur. 941.

4. See 17 R. C. L. 22; 15 Cal. Jur. 948.

theft of a cow, the personal property of certain named persons, and the only evidence in the case being that the cow was the property of said persons, the trial court properly refused instructions requested by defendant and which were to the effect that, if the jury believed the cow in question belonged to a person other than those named in the indictment, they must acquit the defendant and state that the acquittal was on the ground of variance; and there was sufficient evidence in the case to show that the ownership of the cow was as set forth in the indictment.

(1) 36 C. J., p. 905, sec. 484.    (2) 16 C. J., p. 737, sec. 1514.    (3) 16 C. J., p. 737, sec. 1514.    (4) 16 C. J., p. 1045, sec. 2485; 36 C. J., p. 910, sec. 494.

APPEAL from a judgment of the Superior Court of Inyo County. William D. Dehy, Judge. Affirmed.

The facts are stated in the opinion of the court.

Paul W. Schenck and Richard Kittrelle for Appellant.

U. S. Webb, Attorney-General, and Erwin W. Widney, Deputy Attorney-General, for Respondent.

CURTIS, J.—The defendant was convicted of grand larceny and appeals from the judgment and order denying his motion for a new trial. The indictment charges the defendant with the theft of a cow, the personal property of George E. Crocker and Ida F. Proebstel. The evidence shows that the defendant has a homestead in Tunawee Canyon, in the county of Inyo. Upon this homestead is a small cabin of three rooms, in which the defendant and his wife reside at irregular intervals. Tunawee Canyon is situated in a remote and sparsely settled portion of Inyo County. The nearest neighbor of the defendant was one Sam Lewis, who resided about two miles distant from the cabin of defendant. In the fall of 1920 Lewis sold to the complaining witnesses twenty head of white-faced weaned calves. These calves, after the sale by Lewis, were not removed from the immediate locality of the Lewis place, but continued to run the range, which extended over a large district in the vicinity of the homes of Lewis and the defendant. Lewis was in the employ of the complaining witnesses, and on or about the twenty-seventh day of October, 1922, some two years

after he sold the calves, he was riding in the vicinity of defendant's home, looking for cattle. He rode by three traps of the defendant, which were set evidently for wild animals and were baited with fresh beef bones. After riding past the traps and on up the canyon, he turned back and retraced his steps and again came upon the traps, and observed that the fresh beef bones had been removed therefrom since he saw them a short time before. He also noticed tracks near the traps, and following them he came to the cabin of the defendant, where he found the defendant and his wife. He said nothing to them about the disappearance of the beef bones from the traps, but asked them if they had seen any cattle recently, to which they replied that they had not. He then left the cabin and immediately communicated with the sheriff of Inyo county, with the result that on the morning of the 29th of October, 1922, two days thereafter, the sheriff, his deputy, and Lewis appeared at the defendant's cabin, the sheriff bringing with him a search-warrant, authorizing him to search the defendant's premises for "meat." The defendant was not at home, but Mrs. Wilcoxin was, and the sheriff read the search-warrant to her. Under her guidance the sheriff searched the kitchen and dining-room of the cabin, but was not taken by her into the remaining room, the bedroom. The sheriff and his deputy then went out of the house into the back yard and looked through a screen safe or cupboard, in which fresh meat is often kept, but with the exception of a small amount of ham and bacon they found no meat, either inside or outside of the house. While searching the premises outside of the house the deputy sheriff noticed what appeared to him to be a box or other receptacle under the front of the house, which would be under the bedroom. The sheriff and his deputy again entered the house and went into the bedroom. They removed a small stand or table, and then a rug, and in that part of the floor which had been covered by the stand and rug they discovered what some of the witnesses termed "a trap-door" leading under the house. Lifting up this door they found a large boxed-up compartment, three feet in width, six feet in length, and four feet in depth. In this compartment they found, among other things, a keg of meat covered with brine. The meat apparently had come from a recently killed animal, the brine still being of a reddish color due

to the presence of blood from the meat. The meat was beef, and weighed about 105 pounds. It was of inferior quality and it was in irregular "cuts," unlike that turned out by the ordinary packing company, and bore no inspection brand. The sheriff and his deputy then went up the canyon, and about a mile from the cabin found the defendant coming down the canyon toward his cabin. They informed him that they had searched his house and found a barrel of meat, and asked him where he got it. He informed them that he had purchased it at Wreden's Standard Market, on Main Street, in the city of Los Angeles, and that he had a receipt showing his purchase. The defendant then continued down the canyon, and the officers, following his tracks, went on up the canyon for a distance of about one mile farther and found the offal of an animal recently killed, and other evidence indicating that an animal had been slaughtered in the near vicinity. They also found the bones of two legs lying on the ground near by, and under a mesquite bush, about 100 feet from where the offal was found, they discovered the head and hide of a cow and the bones of two legs. The hide was rolled up and was still green. The ears had been cut from the head, and as it was lifted from under the bush a quantity of fresh blood ran from the nostrils. The hide bore an inverted "S" brand and there was also found what appeared to be a small hole, apparently made with a 30-caliber bullet, in the hide on the left side near the shoulder blade. No other hole having the appearance of being made by a bullet was found in the hide. The officers also found what was described by them as a trail of blood leading to the place where the animal had been killed. This trail was marked by blood on the bushes and on the ground along its route and was about 100 yards in length. This trail of blood might indicate that the cow had been shot and thereafter ran a distance of about 100 yards before she fell from the effects of her wound. The officers took with them the head, hide, and bones found by them, and the same, with the meat taken from defendant's cabin, were produced as exhibits at the trial, and there was evidence tending to show that these were all parts of the same animal. There was also evidence to the effect that the animal killed was one of the twenty head of cattle sold by Lewis to the complaining witnesses.

The sheriff and his deputy, after the discovery of the head and hide, returned to defendant's cabin and placed him under arrest. This, as we have seen, was on the twenty-ninth day of October, 1922. The indictment against him was not returned until November 21, 1923, over one year thereafter. The delay, we gain from the record, as explained by the officers, was occasioned by the defendant's insisting that he had purchased the meat found under his house from the Wreden's Standard Market, and that he would produce a receipt showing that he had made such purchase. In February, 1924, the defendant presented to the district attorney of Inyo County a certain paper which he claimed was a receipt, and represented that it was given to him by the Wreden's Standard Market at the time he made the purchase of the meat found in his possession. The paper bore no date, and from witnesses produced at the trial it was shown that the paper claimed by the defendant to be a receipt was not a receipt at all, but was merely a ticket or check, which had been given to a customer of the market on December 24, 1923, who had ordered thirty-three pounds of turkey, but who had never paid for the same, and that neither the turkey nor any other merchandise had been delivered to the customer on this ticket or check.

[1] It is first contended by appellant that the evidence is insufficient to support the judgment, in that it fails to show any taking or asportation of the cow while alive. Appellant maintains that before the defendant can be found guilty under the indictment against him, one charging him with the felonious stealing of a cow, that the evidence must show that he took, drove or led away a live cow. He further maintains that the evidence in this case, on behalf of the prosecution, under the most favorable construction of which it is susceptible, shows only that the cow was killed and thereafter her dead body was appropriated to defendant's use and carried away by him, and appellant insists that such evidence is insufficient to support a charge of grand larceny under the indictment herein. In support of this contention appellant refers to the fact that England and many of the states of this country which have statutes originally like our own upon the subject of grand larceny also have enacted further statutes making it grand larceny to shoot or kill certain animals, being the same animals which are the sub-

ject of grand larceny, with the intent thereafter to steal the carcass of said animals. He has also called our attention to a number of decisions rendered in these jurisdictions which draw a distinction between the taking or asportation of the animal in the live state and the killing of such an animal with the intent to steal it, and then to take away its body. (*Rex* v. *Williams*, 1 Moody C. C. 107; *State* v. *Butler*, 65 N. C. 309; *State* v. *Alexander*, 74 N. C. 232.) In *Rex* v. *Williams* the defendant was accused of grand larceny in two counts, one charging that he stole three sheep and the other that he killed the sheep with the intention thereafter of stealing their dead bodies. The evidence shows that the defendant killed the sheep and thereafter cut open their bodies and took therefrom the fat, leaving their carcasses. The court held that this evidence supported the second, but not the first, count of the indictment. In *State* v. *Butler* the defendants were accused of grand larceny in the theft of a cow. The evidence showed that they shot down the cow and cut off her ears, but made no attempt to remove her body. The trial court instructed the jury that if they believed that the defendants had shot down the cow with the intent to steal her, and in the attempt to feloniously appropriate her to their own use had cut off her ears, they were guilty of grand larceny. On appeal the judgment was reversed, the court holding: "The indictment in this case is not under the act above referred to (the act making it grand larceny to kill the animal with the intent thereafter to appropriate her body to the use of the accused), but is for larceny at common law; and we are of the opinion that there was *no evidence* of an asportation of the cow to be submitted to the jury." In *State* v. *Alexander, supra,* the defendant was indicted for the theft of a hog. "The hog was found dead, having been shot. Its ears had been cut off and one of its hams skinned, but the skin had not been severed from the animal, no part being cut off except the ears." Upon the authority of *State* v. *Butler, supra,* the supreme court reversed the judgment. In the course of the opinion the court said: "The case here shows that there was no removal of the hog, but that it remained *in situ* as it had been shot down." It will be observed that in none of these three cases just referred to do the facts show that the body of the animal, after being killed, had been taken

away and appropriated to the use of the accused, and in this respect they are entirely unlike the case we have before us. While they do draw a distinction between the facts necessary to prove grand larceny at common law and the later statutory offense, we are not fully convinced that they lay down a proper rule to be followed in those jurisdictions where the only statute in effect is the ordinary statute of grand larceny.

On the other hand, in the case of *McIntosh* v. *State,* 105 Neb. 328 [12 A. L. R. 798, 180 N. W. 573], the defendant was charged with grand larceny. Justice Day, in delivering the opinion of the court, said: "On this state of facts it is suggested that circumstances do not show the stealing and carrying away of the steer as a live animal. The testimony shows a clear and unmistakable intent on the part of the accused to steal and sell the meat. To aid him in carrying out this purpose he shot and killed the steer, took possession of the carcass and dragged it some distance from the spot, where, after severing the head from the body, he became apprehensive and fled. We think the facts bring the case within the inhibition of the statute. . . . It is clear there was a sufficient asportation to satisfy the law."

In *Hunt* v. *State,* 55 Ala. 138, a similar question was presented, and the court said: "It is the 'live hog' that he must intend to steal (which he may, of course, do by killing it and then taking it away) that constitutes grand larceny in such a case." (See, also, *Frazier* v. *State,* 85 Ala. 17 [7 Am. St. Rep. 21, 4 South. 691]; *Kemp* v. *State,* 89 Ala. 52 [7 South. 413].)

In *People* v. *Smith,* 112 Cal. 333, 339 [44 Pac. 663], our supreme court cites with approval *Hunt* v. *State, supra,* and in the course of its opinion says: "To make the stealing of one of the animals named, however, grand larceny, the animal must be a live one and not a dead carcass. It is true, if one should kill one of the animals for the purpose of stealing it, and then take and carry away the whole or a part of the body, it would be grand larceny."

Appellant in his brief comments upon the last sentence of the above quotation and suggests that this part of the opinion was not necessary for the decision of the case and that it is therefore *dictum* merely. We are not prepared to agree with him in this comment, but whether it is *dictum* or not, we

think it correctly states the law so far as it applies to this state. The facts in the case before us were sufficient to justify the jury in believing that the defendant killed the cow and thereafter skinned the carcass and appropriated to his use the meat thereof. Under the authorities above cited these facts were sufficient to prove an asportation of the live animal, and, therefore, they were sufficient to support the verdict.

[2] A further contention of appellant is that there was no proof of the *corpus delicti* to warrant the court in admitting evidence of the extrajudicial statements of the defendant. Appellant maintains, and correctly so, that in order to prove the *corpus delicti* in this case it is necessary to prove not only that the cow was killed, but that her death was due to some criminal agency. The bullet hole in the hide of the cow on her left shoulder, undoubtedly tended to prove that the cow met her death as the result of a gunshot wound. It was also competent for the jury to consider that the hide and head of the cow were found secreted in some bushes some distance from where the cow had been killed, the hide rolled up and the ears cut from the head, to determine whether the cow had been stolen or not. (*People* v. *Murphy*, 47 Cal. 103.) These facts, if believed by the jury, were sufficient to warrant them in finding that the cow had been stolen. Appellant further argues, however, that, conceding this to be true, these facts do not prove the *corpus delicti* as the crime is described in the indictment against the defendant, that is, the theft of a live cow. Appellant asserts that these facts at most only prove that the body of the cow was stolen, but not that the cow itself, while alive, was stolen, and, therefore, that the *corpus delicti*, that is, the theft of a live cow, as required by the indictment, had not been proved. [3] "To authorize the reception and consideration by the jury of evidence of an extrajudicial confession or admission of a defendant, the people need not establish the *corpus delicti* by proof of the clear and convincing character required to support a conviction. It is sufficient if there is some proof, or *prima facie* proof, or even slight proof, of the *corpus delicti*." (8 Cal. Jur. 235.) Slight proof of the *corpus delicti* is all that is required. (*People* v. *Jones*, 123 Cal. 65 [55 Pac. 698]; *People* v. *Ver-*

*trees,* 169 Cal. 404 [146 Pac. 890]; *People* v. *Alba,* 52 Cal.
App. 603 [199 Pac. 894].)

As the court said in *People* v. *Jones, supra,* in discussing
the necessity of proving the *corpus delicti:* "The buildings
were in fact burned, and the circumstances tended in some
degree to indicate that the fire was of incendiary origin, and
therefore the confessions were in some degree corroborated."
We think with equal assurance we can say that the facts in
the case before us show that the cow was shot and that the
circumstances, particularly the finding of the hide and head
concealed in the bushes near where she had been killed, with
the ears cut from the head, tended in some degree to indicate
that the person by whom she was shot killed her with the
felonious intent to appropriate her to his own use. These
facts establish the *corpus delicti,* at least *prima facie,* and as
they were not denied nor explained by the defendant, they
warranted the court in admitting the extrajudicial state-
ments of the defendant, and, taken in connection with these
statements and the other acts and conduct of the defendant,
subsequent to his arrest, were sufficient to support the judg-
ment.

[4] Appellant proposed an instruction to the effect that
if the jury believed the cow in question belonged to Sam
Lewis, they must acquit the defendant and state that
the acquittal was on the ground of variance. A similar in-
struction, but referring to the ownership of the cow by
Crocker Company, was also proposed, as were two others,
one referring to the ownership of the cow by George Crocker
individually and the other by Ida Proebstel individually.
The court refused to give any of these instructions. There
was no error on the part of the court in refusing these in-
structions. There was no evidence in the case that any one
of these parties was the owner of the cow. The only evi-
dence regarding ownership which we have found in the rec-
ord is that the cow was the property of George Crocker and
Ida Proebstel. Neither is there, in our opinion, any merit
in appellant's contention that the verdict is not supported
by the evidence in that it fails to show that the ownership of
the cow was in George Crocker and Ida Proebstel. Sam
Lewis testified that he sold the cow, when a calf, to George
Crocker, and Crocker testified that at that time he was in

partnership with his mother, Ida Proebstel, and that he bought the calf from Lewis for himself and mother, and that they had owned it ever since the purchase.

The judgment and order denying motion for a new trial are affirmed.

Conrey, P. J., and Houser, J., concurred.

A petition by appellant to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on December 18, 1924.

All the Justices concurred.