[Crim. No. 2550. First Dist., Div. One. Feb. 14, 1949.]

THE PEOPLE, Respondent, v. JOHN BENJAMIN GRIFFIN, Appellant.

Edward E. Craig for Appellant.

Fred N. Howser, Attorney General, Clarence A. Linn, Deputy Attorney General, J. F. Coakley, District Attorney, and George Nye, Deputy District Attorney, for Respondent.

PETERS, P. J.—Defendant was charged by an information with assault with a deadly weapon with intent to commit murder, and also with two prior convictions of felonies (grand theft and breaking and entering with intent to steal), and service of terms therefor. He admitted the priors and pleaded not guilty to the main charge. He was tried before the court without a jury and found guilty of the lesser and included offense of assault with a deadly weapon. On this appeal his sole contention is that the trial court committed prejudicial error in admitting into evidence, over objection and before proof of the *corpus delicti,* certain admissions made by him and tending to show that he had committed the offense charged.

It is hornbook law that before the extrajudicial statements and admissions of a defendant are admissible in evidence the prosecution must establish the *corpus delicti.* (*People* v. *Jones,* 123 Cal. 65 [55 P. 698] ; *People* v. *Quarez,* 196 Cal. 404 [238 P. 363] ; *People* v. *Simonsen,* 107 Cal. 345 [40 P. 440] ; *People* v. *Besold,* 154 Cal. 363 [97 P. 871] ; *In re Schuber,* 68 Cal.App.2d 424 [156 P.2d 944].) It is equally clear, however, that, in laying the foundation for the introduction of such confessions or admissions, the prosecu-

tion " '. . . need not establish the *corpus delicti* by proof of the clear and convincing character required to support a conviction. It is sufficient if there is some proof, or *prima facie* proof, or even slight proof, of the *corpus delicti*.' (8 Cal. Jur. 235.) Slight proof of the *corpus delicti* is all that is required." (*People* v. *Wilcoxin,* 69 Cal.App. 267, 275 [231 P. 377].)

The difficulty the prosecution had in the instant case was that the key witness, Ernestine Thomas, testified at the preliminary examination to certain facts which, if true, clearly and unequivocally established that defendant had committed the crime charged. Other witnesses gave statements to the police which tended to show that the offense charged had been committed. But on the trial Ernestine Thomas brazenly testified that her testimony on the preliminary examination was false. Several of the other witnesses testified differently from the stories they had given the police. It is quite obvious that Ernestine deliberately and intentionally falsified her testimony either on the preliminary examination or at the time of trial. However this may be, the prosecution, nevertheless, was able to produce, through these unwilling witnesses, enough evidence to show that an assault with a deadly weapon was in fact committed by defendant. Thus, it was not error to admit the extrajudicial statements of defendant.

At the trial defendant offered no testimony at all. Ernestine testified that on March 11, 1948, between 8 or 9 o'clock in the evening she and two other persons were visiting defendant; that she had been in the room with defendant earlier in the evening and then went home to change her clothes, and returned to borrow two phonograph records; that she had been drinking and was "pretty high"; that defendant refused to give her the records, and ordered her to remain in the room and not to leave because of her condition; that she then left the house by the front door and started walking up the street; that she saw defendant come out the back door; that she did not see whether he had a gun; that she heard a shot, and saw fire from a gun; that she does not know which way the gun was pointing; that she saw it was defendant who was shooting; that she thinks he fired twice; that when the second shot was fired she had reached and turned the corner; that she was directly across the street from defendant when he fired the first shot; that she could not say whether the first shot had been fired at her, but "I thought he was shooting at me, and I ran"; that she saw a truck across the street

in which the witness Goodwin was sitting; that when the second shot was fired she was not trying to get into the truck but had run around the corner; that, so far as the first shot is concerned, "the only thing I know, the firing came across—looked like to me across the street."

This testimony is to be compared with the story told by this witness at the preliminary. She then testified that, while in defendant's room, he threatened to kill her if she left; that when she got outside she saw defendant with a gun; that she saw him throw the gun to his shoulder; that she begged him not to shoot; that she saw him point the gun at her, and then shoot; that she started to run towards the truck and was trying to get in when defendant shot a second time.

The other witnesses were equally evasive. Goodwin, who was sitting in the truck parked outside the house at the time of the shooting, testified that he heard two shots; that he saw the flash of one of them; that he did not know which way the defendant was shooting; that he did not know whether defendant was shooting toward or away from Ernestine; that he remembers that the shooting was in the air; that the gun "wasn't pointed towards her, because it was up over her, kind of on an angle. . . . It wasn't straight up, but it wasn't towards her."

Etta Patterson, who was in the house at the time of the shooting, testified that she heard the shooting; that defendant came in the house thereafter and said something about shooting; that "I don't know for sure" if he then stated "I tried to hit her"; that he "said something about shooting, but I don't know whether he said he tried to kill her or tried to hit her or what. . . . All I know is he said something about shooting."

Police officers testified that the next day they found a fresh bullet hole in the truck just above the left rear wheel, and found defendant's rifle hidden under the house, loaded and cocked.

At this point in the trial there was offered and introduced into evidence, over defendant's objections, two statements made by defendant to the police officers shortly after defendant was arrested. It is the admission of these statements that defendant charges as error. If such statements were properly admitted, the admissions contained therein, together with the above evidence, amply support the judgment. But defendant urges that when such statements were admitted the *corpus delicti* had not been sufficiently established. As already

pointed out, in determining this question, we are not concerned with whether the evidence, without the admissions, was of such a character that it would support a conviction, but are simply required to ascertain whether, at the time the extrajudicial statements of defendant were admitted, the prosecution had produced "slight proof" that the crime charged had in fact been committed. Appellant urges that the evidence simply shows that he shot over Ernestine's head, and that it fails to show that he intended to injure her, or that what he did was likely to injure her. The evidence goes further than that. It shows that Ernestine and defendant had an argument; that Ernestine left the house and defendant followed with a gun; that Ernestine saw and heard him shooting and she thought he was shooting at her; that Ernestine stated that the first shot was fired when she was directly across the street from defendant; that she ran away and passed the truck; that after the occurrence a fresh bullet hole was found in the truck. This evidence would seem to be at least some "slight proof" that an assault with a deadly weapon had been committed. ▆ To commit that offense no proof of a specific intent to commit the offense is necessary. Proof of an intent to shoot the victim is not necessary. Thus, in *People* v. *Corlett,* 67 Cal.App.2d 33, 54 [153 P.2d 595, 964], it is stated: "The defendant was convicted of a mere assault with a deadly weapon under section 245 of the Penal Code. That section provides that 'Every person who commits an assault . . . with a deadly weapon or instrument or by any means or force *likely to produce great bodily injury,*' is guilty of that offense. The *intention* to actually injure another is not mentioned in that section. Section 240 of that code provides that 'An assault is an unlawful attempt, *coupled with a present ability,* to commit a violent injury on the person of another.' If a rifle is deliberately and unlawfully fired toward another person in a manner 'likely to produce great bodily injury,' an assault with a deadly weapon may be accomplished even if the defendant does not really intend to *hit* the victim. It has been held that an assault with a deadly weapon does not 'involve the necessity of proof of any specific intent to commit it.' "

In *People* v. *Lim Dum Dong,* 26 Cal.App.2d 135, 140 [78 P.2d 1026], the court held that to prove an assault with a deadly weapon "it was not necessary for the prosecution to specifically prove the defendant intended to injure the Japanese girl by firing the revolver at her."

In *People* v. *Peak*, 66 Cal.App.2d 894, 900 [153 P.2d 464], the court summarized the applicable law as follows: "In the offense of assault with a deadly weapon, malice is not an element of the crime; an intent to use the deadly instrument may be implied from the manner of its use. If the act is wrongful and the firing of a gun under the circumstances is unlawful, the intent may be inferred from the method used, including the position of the parties and all of the surrounding circumstances. 'Where the act is both unlawful and wrongful, and well calculated to inflict serious personal injury, the law will imply malice and an unlawful intention and override any actual intention existing in the mind of the aggressor. Thus, while it is not an assault to fire a gun in the air for the purpose of frightening another, it is an assault, without regard to the aggressor's intention, to fire a gun at another or in the direction in which he is standing. The law will not tolerate such a reckless disregard for human life.' "

The Supreme Court, in *People* v. *McCoy*, 25 Cal.2d 177, 194 [153 P.2d 315], had the following to say on this subject: ". . . *specific intent* is not an element of the crime of assault with a deadly weapon . . ., and so where the evidence is sufficient to establish the character of the instrument as charged, it is not necessary for the prosecution to prove specifically that the defendant intended to injure the complaining witness. Such intent may then be implied from the doing of the unlawful act."

These cases were all discussing the contention that the evidence involved in those cases was not sufficient to sustain the convictions, and the court was laying down the rule of law applicable to such question. In all of them convictions of assault with a deadly weapon were upheld. In the instant case we are not concerned with whether the evidence under discussion, independently of defendant's confession, would support a conviction, but simply with whether that evidence constituted some "slight proof" that the crime charged had been committed. If the elements of the crime involved, as set forth in the above cases, be kept in mind, we have no hesitancy in holding that, although that evidence, without the confession, might not support the conviction, it at least amounted to some "slight proof" that the crime charged had been committed by defendant. This being so, the confession was properly admitted.

The judgment appealed from is affirmed.

Ward, J., and Bray, J., concurred.