[Civ. No. 26819. First Dist., Div. One. June 29, 1970.]

In re STEVEN C., a Person Coming Under the Juvenile Court Law.
CARROLL B. PEBBLES, as Supervising Probation Officer, etc.,
Plaintiff and Respondent, v.
STEVEN C., Defendant and Appellant.

Page content is redacted.

257

## Counsel

Brewster Q. Morgan, Fred A. Culver and Robert H. Betzenderfer for Defendant and Appellant.

Thomas C. Lynch, Attorney General, Albert W. Harris, Jr., Assistant Attorney General, Robert R. Granucci and Karl S. Mayer, Deputy Attorneys General, for Plaintiff and Respondent.

## Opinion

**MOLINARI, P. J.**—Steven C., a minor (hereafter referred to as "Steven"), appeals from an order of the juvenile court adjudging him to be a ward of the court and committing him to the Youth Authority upon approval of an order of the juvenile court referee finding the minor to have violated the provisions of Penal Code section 245.[1]

### *Facts*

While in his office at approximately 2:20 p.m. November 1, 1968, James Kearney, principal of the high school Steven attended, heard two "shots" he thought to be firecrackers. Upon searching his office and an adjacent bathroom, Kearney found, in each place, a spent .22 caliber bullet. Holes in the wall evidenced such bullets having come through the walls.

Vice-principal Walter Odone and Officer Ray Fortin were sent in search of the gun from which such bullets may have been fired. A .22 caliber pistol was found in the school incinerator and returned to Kearney's office. Steven's thumb print was lifted from the weapon but was conjectured not to have been in a position normally held for firing. A criminologist testified that analysis of the bullets indicated their having been fired from the pistol. However, his examination of Steven's hand did not indicate affirmatively that Steven had fired the pistol.

Kevin Conroy, a juvenile division police officer, interrogated Steven in the principal's office. After Steven had been admonished of his *Miranda*

[1]Penal Code section 245, subdivision (a), in relevant part, provides: "Every person who commits an assault upon the person of another with a deadly weapon or instrument or by any means of force likely to produce great bodily injury is punishable by imprisonment in the state prison not exceeding 10 years, or in a county jail not exceeding one year, or by fine not exceeding five thousand dollars ($5,000), or by both such fine and imprisonment."

rights,[2] he admitted that he had "handled" the gun but explained that he had only hidden the gun for a person he identified as "Tony."

Hector Agustin, Steven's school friend, testified that Steven had shown him the subject gun at lunch the day of the incident. Agustin further testified that Steven had said that "he was going to shoot some windows" at school. Agustin did not see Steven do any shooting at school. Rubin Bray, also Steven's school acquaintance, testified that Steven also showed him the pistol at lunch the day of the shooting and that Steven had remarked "It would be funny if I shot at the principal." Bray did not see Steven shoot but did hear three "shots" fired while at school.

Testifying on his own behalf, Steven denied adamantly having fired the pistol on the day of the incident but did admit having handled the gun on that day. He explained that he had received the gun from Tony Savelli at lunch but had given it back to him before returning to school and that he did not thereafter again handle the pistol except to hide it at school upon Tony's request. Steven denied ever having said he intended to shoot at the principal.

### *Contentions*

Defendant asserts five grounds for reversal: (1) That he was denied his constitutional right to a jury trial; (2) that there was prejudicial error in allowing defendant's probation officer to conduct the case against defendant; (3) that his right against self-incrimination was violated because he was not given adequate *Miranda* warnings; (4) that the evidence was insufficient to sustain a finding that he violated Penal Code section 245; and (5) that he was deprived of due process because the court adjudicated his guilt upon the evidence adduced on the basis of a preponderance of the evidence rather than by proof beyond a reasonable doubt.

### *Jury Trial*

Defendant first argues that it was error to deny his request for a jury trial because a jury trial is constitutionally compelled even in juvenile court proceedings. We disagree.

The recent United States Supreme Court decisions which have declared that juveniles are entitled, under the Fourteenth Amendment, to due process protection in juvenile court proceedings (*In re Gault,* 387 U.S. 1, 30-31 [18

[2]Steven "was told that he did not have to answer any questions without the presence of an attorney, and that he didn't have to answer any questions at all; that he had a right to remain silent; that if he wanted an attorney, we would get hold of one for him."

L.Ed.2d 527, 547-548, 87 S.Ct. 1428]; *In re Winship,* 397 U.S. 358, 359 [25 L.Ed.2d 368, 372, 90 S.Ct. 1068]) have not extended such protection to include the right to a jury trial. (See *Kent* v. *United States,* 383 U.S. 541, 555 [16 L.Ed.2d 84, 94, 86 S.Ct. 1045].) In *Gault* the Supreme Court stated that it did not purport to rule on whether ordinary due process requirements, such as the right to a jury trial, must be observed in a juvenile dispositional hearing. (P. 27 [18 L.Ed.2d at pp. 545-546].)

In other jurisdictions a number of cases have held that a jury trial is required in juvenile proceedings. (See *Nieves* v. *United States,* 280 F.Supp. 994, 998; *Peyton* v. *Nord,* 78 N.M. 717 [437 P.2d 716].) The California rule, however, is that a juvenile is *not* entitled to a jury trial. (*In re Daedler,* 194 Cal. 320, 332 [228 P. 467]; *People* v. *Fifield,* 136 Cal.App.2d 741, 743 [289 P.2d 303]; *In re T.R.S.,* 1 Cal.App.3d 178, 182 [81 Cal.Rptr. 574]; *In re R.L.,* 3 Cal.App.3d 707, 713 [83 Cal.Rptr. 81]; *In re Dennis M.,* 70 Cal.2d 444, 456 [75 Cal.Rptr. 1, 450 P.2d 296].) The rationale of the California cases is that the Constitution does not require that the full panoply of rights accorded adults accused of crime be extended to juveniles since to do so would introduce a strong tone of criminality in juvenile proceedings. (See *In re T.R.S., supra; In re Dennis M., supra,* at p. 450; *In re R. L., supra.*) Accordingly, in the absence of a mandate from the United States Supreme Court we must follow the California rule.

Steven's reliance upon *Duncan* v. *Louisiana,* 391 U.S. 145 [20 L.Ed.2d 491, 88 S.Ct. 1444], is misplaced. That case stands for the proposition that the Sixth Amendment right to a trial by jury is guaranteed by the Fourteenth Amendment in criminal proceedings. (P. 148 [20 L.Ed.2d at pp. 495-496].) That case involved criminal proceedings against adults and does not mention or imply that the rule it enunciated applies to juvenile proceedings. We here observe that in *DeBacker* v. *Brainard,* 396 U.S. 28 [24 L.Ed.2d 148, 90 S.Ct. 163], the issue of the right to a jury trial was tendered to the United States Supreme Court, but it declined to rule on the issue on the basis that the *DeBacker* proceedings predated May 20, 1968, the effective date of the principle announced in *Duncan.* The rationale of the Supreme Court's declination appears to be that since the court would not extend the *Duncan* rule to proceedings commenced prior to May 20, 1968, even if it were inclined to accord a jury trial to juveniles, it would certainly not do so for juvenile proceedings had before that date. (At pp. 32-33 [24 L.Ed.2d pp. 153-154].)

*Quantum of Proof*

Steven contends that constitutional error was committed by not

requiring proof beyond a reasonable doubt.[3] This contention is meritorious in the light of the recent United States Supreme Court case in *In re Winship, supra,* 397 U.S. 358 [25 L.Ed.2d 368], which holds that proof beyond a reasonable doubt is a Fourteenth Amendment due process requirement applicable against state juvenile courts. (P. 375 [25 L.Ed.2d at pp. 381-382].) The effect of this decision is to declare as unconstitutional the preponderance of evidence standard provided for in Welfare and Institutions Code section 701 and to overrule California cases which have held the statute constitutional. (See *In re Dennis M., supra,* 70 Cal.2d 444, 450; *In re Davis,* 242 Cal.App.2d 645, 651 [51 Cal.Rptr. 702]; *In re Johnson,* 227 Cal.App.2d 37, 39 [38 Cal.Rptr. 405]; *In re Castro,* 243 Cal.App.2d 402, 408 [52 Cal.Rptr. 469]; *In re Steven F.,* 270 Cal.App.2d 603, 604 [75 Cal.Rptr. 887].)

Although the *Winship* case does not indicate whether its decision operates prospectively only, we deem it applicable to pending cases, including those on appeal. We do so by analogy to the United States Supreme Court decisions which have extended various Bill of Rights protections to the states via the Fourteenth Amendment to cases on appeal at the time of their decision, even though purporting not to apply the decision retroactively. (See, e.g., *Mapp* v. *Ohio,* 367 U.S. 643 [6 L.Ed.2d 1081, 81 S.Ct. 1684]; *Escobedo* v. *Illinois,* 378 U.S. 478 [12 L.Ed.2d 977, 84 S.Ct. 1758]; *Griffin* v. *California,* 380 U.S. 609 [14 L.Ed.2d 106, 85 S.Ct. 1229]; *Kent* v. *United States, supra,* 383 U.S. 541 [16 L.Ed.2d 84].) Accordingly, in such cases, notwithstanding the judgment's correctness when entered, it will be reversed while the case is on direct review if a rule of constitutional dimension substantially affecting the rights of the appellant intervenes by reason of a United States Supreme Court decision. (See *Vandenbark* v. *Owens-Illinois Glass Co.,* 311 U.S. 538, 541 [85 L.Ed. 327, 329, 61 S.Ct. 347]; *Carpenter* v. *Wabash Ry. Co.,* 309 U.S. 23, 26 [84 L.Ed. 558, 561, 60 S.Ct. 416]; *Dinsmore* v. *Southern Express Co.,* 183 U.S. 115, 120 [46 L.Ed. 111, 113, 22 S.Ct. 45]; *Crozier* v. *Krupp,* 224 U.S. 290, 308 [56 L.Ed. 771, 777, 32 S.Ct. 488]; *Southern Public Utility Dist.* v. *Silva,* 47 Cal.2d 163, 165 [301 P.2d 841].)

Our conclusion that the *Winship* rule is applicable to the instant case requires that we reverse the order appealed from and remand for a retrial under standards consistent with that decision.

[3]At the beginning of the proceedings before the referee Steven's counsel made a specific request that the standard of the burden of proof be that of guilt beyond a reasonable doubt. This request was denied.

*Sufficiency of Evidence*

Defendant argues that there was insufficient evidence to support the referee's determination that defendant violated Penal Code section 245. From an appellate viewpoint there is substantial evidence to sustain that determination,[4] but, as indicated above, the order must nevertheless be reversed because that evidence was not measured by the trier of fact in terms of the quantum of proof standard prescribed by the reasonable doubt rule.[5] We do, however, consider here, for future guidance, Steven's concomitant argument that the crime proscribed by Penal Code section 245 is a "specific intent" crime and that the evidence was insufficient to establish such intent. Although there have been conflicting decisions on this question,[6] the matter has now been put at rest by the decision in *People* v. *Hood,* 1 Cal.3d 444 [82 Cal.Rptr. 618, 462 P.2d 370]. That case holds, in essence, that specific intent is not required to establish a violation of Penal Code section 245, but that the required intent may be inferred from the defendant's act. (P. 458.) The rationale of *Hood* is that with respect to Penal Code section 245 violations the distinction between specific and general intent is purely chimerical. (P. 458.)

*Probation Officer*

Steven next asserts that it was error to allow Probation Officer Cassota to prosecute the case against him. A specific objection to Cassota's acting in this capacity was interposed by Steven's counsel. In considering this contention we observe that the case against Steven was in fact presented by Cassota who called and examined witnesses on behalf of the People, and cross-examined Steven who testified on his own behalf, and cross-examined Steven's mother who was called as a defense witness. The record also discloses that during the course of the proceedings before the referee Cassota objected

[4]Such evidence is established by the following: Steven's statement regarding shooting at the principal; his possession of the gun prior to the incident; and the finding of his thumb print on the gun.

[5]Our function is not to determine whether guilt was established beyond a reasonable doubt, but whether there is substantial evidence, direct or circumstantial, to support upon any hypothesis the referee's determination. (*People* v. *Daugherty,* 40 Cal.2d 876, 885 [256 P.2d 911]; *People* v. *Newland,* 15 Cal.2d 678, 683 [104 P.2d 778].)

[6]Some cases have held it to be only a general intent crime. (See, e.g., *People* v. *Sanchez,* 35 Cal.2d 522, 526-528 [219 P.2d 9]; *People* v. *Griffin,* 90 Cal.App.2d 116, 120-121 [202 P.2d 573]; *Newman* v. *Larsen,* 225 Cal.App.2d 22, 24 [36 Cal.Rptr. 883]; *People* v. *Morrow,* 268 Cal.App.2d 939, 949-954 [74 Cal.Rptr. 551].) Others have concluded that specific intent is required. (*People* v. *Carmen,* 36 Cal.2d 768, 774-775 [228 P.2d 281]; *People* v. *Wilson,* 66 Cal.2d 749, 759 [59 Cal.Rptr. 156, 427 P.2d 820]; *People* v. *Coffey,* 67 Cal.2d 204, 221-222 [60 Cal.Rptr. 457, 430 P.2d 15]; *People* v. *Fanning,* 265 Cal.App.2d 729, 734 [71 Cal.Rptr. 641]; *People* v. *Wheeler,* 260 Cal.App.2d 522, 525, fn. 4 [67 Cal.Rptr. 246].)

to a question interposed to Steven's mother, and at the conclusion of the hearing argued that the petition should be sustained.

Adverting to the duties and role of the probation officer in juvenile court proceedings, we observe that there appears to be authorization under the Juvenile Court Law for the presentation by such officer of the evidence upon which it is sought to have the minor declared a ward or dependent child of the court. We note, initially, that under that law the probation officer is specifically authorized to file the petition by which such declaration is sought following an investigation by him. (Welf. & Inst. Code, §§ 650, 652, 653; see § 656.[7]) We also observe that, except as waived under the provisions of section 581,[8] the probation officer is required by the provisions of that section to be present in court at the hearing to represent the interests of the minor and to "furnish to the court such information and assistance as the court may require." In addition to these duties the probation officer is empowered under the provisions of section 582, upon the order of the court, to make such investigation of appropriate facts and to file a written report and recommendation with respect thereto of any matter involving the custody, status or welfare of the minor for the court's consideration.[9]

The foregoing statutes clearly permit the probation officer, if requested by the court, to appear and participate in the hearing to assist in the ascertaining and presenting of the evidence by which it is sought to have the minor declared a ward or dependent child of the court. When he so acts the probation officer is not engaged in the unauthorized practice of the law as suggested by Steven, but acts pursuant to statutory authority as a representative of the state which stands *in loco parentis* to the minor in a proceeding whose primary consideration is the minor's welfare. (See *In re Florance,* 47 Cal.2d 25, 28 [300 P.2d 825].) The probation officer does

[7]Unless otherwise indicated, all statutory references hereinafter made are to the Welfare and Institutions Code.

[8]Section 581 provides, in pertinent part, as follows: "Except where waived by the probation officer, judge or referee and the minor, the probation officer shall be present in court to represent the interests of each person who is the subject of a petition to declare such person to be a ward or dependent child upon all hearings or rehearings of his case, and shall furnish to the court such information and assistance as the court may require. . . . It shall be the duty of the probation officer to prepare for every hearing on the disposition of a case . . . a social study of the minor, containing such matters as may be relevant to a proper disposition of the case. Such social study shall include a recommendation for the disposition of the case."

[9]Section 582 provides: "The probation officer shall upon order of any court in any matter involving the custody, status, or welfare of a minor or minors, make an investigation of appropriate facts and circumstances and prepare and file with the court written reports and written recommendations in reference to such matters. The court is authorized to receive and consider the reports and recommendations of the probation officer in determining any such matter."

not act as a district attorney[10] since a proceeding in the juvenile court is not deemed a criminal proceeding nor a proceeding designed to punish the minor, but one to supplant parental supervision which has been lacking so that the minor will not become a criminal. (§ 503; *In re Schubert,* 153 Cal.App.2d 138, 141 [313 P.2d 968]; *In re Bacon,* 240 Cal.App.2d 34, 45 [49 Cal.Rptr. 322]; see *In re Florance, supra.*) Nor is he acting as an attorney in violation of Business and Professions Code section 6125 which provides that no person shall practice law in California unless he is an active member of the state bar. The term "practice of the law" means "to do the work as a business which is commonly and usually done by lawyers in this country." (*People* v. *Merchants Protective Corp.,* 189 Cal. 531, 535 [209 P. 363]; *Smallberg* v. *State Bar,* 212 Cal. 113, 119 [297 P. 916].) It means in essence the in-court or outside-court representation of another. Here there is no claim that Cassota gave legal advice and counsel to Steven. Nor is there any merit to Steven's suggestion that under section 581 the probation officer acts as the minor's advocate. Although there is language in that section that the probation officer "shall be present in court to represent the interests" of the minor, that language has been held not to mean that the probation officer represents the minor as an attorney or advocate. (*People* v. *Curry,* 97 Cal.App.2d 537, 549 [218 P.2d 153] [disapproved on another point in *People* v. *McCaughan,* 49 Cal.2d 409, 420 (317 P.2d 974)].)

In view of the foregoing, it is clear to us that the role of the probation officer in juvenile court proceedings is not one in the context of an adversary-advocate, but a role in which he acts as an arm of the court in the best interests of the minor. His function is to determine in the first instance, upon investigation, whether the minor's best interests would be served by having him declared a ward of the court. If he files a petition for such declaration it is his duty to present all pertinent and relevant facts supportive of his conclusion that the best interests of the minor would be served by having him declared a ward of the court; and it is his duty to furnish such assistance and information as the court may require to aid it in the disposition of the case. (*In re Florance, supra,* 47 Cal.2d 25, 28; § 581.) He is, moreover, obligated to prepare a report for the court as to the relevant facts and considerations and to recommend a disposition. (§ 581; *In re Harrison,* 215 Cal.App.2d 723, 727 [30 Cal.Rptr. 473].) Accordingly, if required by the court the probation officer must serve as the person who elicits all relevant information so as to insure an intelligent disposition in the child's best objective interests. (See *In re Florance, supra,* at p. 28; *People* v. *Curry, supra,* 97 Cal.App.2d 537, 549.) In sum, although the role of the probation officer may be adverse to the desires of the minor

[10]Steven has cited us to Government Code section 24002 which provides that the district attorney must be a member of the bar.

with respect to the disposition of the case, his function does not involve a conflict of interest since he does not represent the minor as an attorney or advocate but, rather, represents the state in determining what is for the minor's best interests.

In the recent case of *In re Dennis M., supra,* 70 Cal.2d 444, 453, the Supreme Court did not take umbrage at the presentation of the evidence of the state by a non-lawyer probation officer, but apparently took cognizance of the procedure by observing that the probation officer was obliged to conduct the hearing under the requirements of the *Gault* decision with respect to the privilege against self-incrimination in juvenile proceedings even though the probation officer was not as alert as a district attorney to the latest requirements of the decisions.

In any event, Steven has failed to demonstrate that he was prejudiced by the probation officer's conduct. We observe that even if the probation officer had not been the one to elicit the relevant evidence, the facts could have been elicited by the court (§ 680) or by the district attorney whom the court could have requested to appear and participate in the hearing to assist in the ascertaining and presenting of the evidence. (§ 681.) We do not perceive upon a perusal of the record that, in the absence of the probation officer's conduct at the hearing, there would not have been a finding that Steven violated Penal Code section 245. (*People* v. *Watson,* 46 Cal.2d 818, 836 [299 P.2d 243].)[11]

---

[11]In view of the implications of the holding in *Gault* that a minor is entitled to the due process safeguards afforded adults where the proceedings to determine delinquency may result in commitment to an institution in which a juvenile's freedom is curtailed, the role of a probation officer in the adjudicatory phase of the juvenile proceeding should be reexamined. Since, in such case, the proceeding is adversary and the applicability of the requirements of the latest decisions dealing with constitutional rights are present therein, an undue burden is placed upon the probation officer who is not a lawyer. The imbalance created by the situation where the state is represented by a non-lawyer probation officer and the juvenile is represented by a lawyer was apparently recognized by the Legislature when it enacted section 681 in 1967. That section provides, among other things, for the appearance of the district attorney with the consent of the juvenile court judge in adversary juvenile court proceedings in cases where there is a contested issue of fact or law, the minor is represented by counsel, and it is alleged that the minor has violated any law of this state. We apprehend, too, that the dual role of the probation officer in presenting the evidence in support of his petition in the adjudicatory stage of the proceedings and in making recommendations to the judge in the dispositional process of the proceedings can, in a given instance, bring into question whether the dual role measures up to the fair treatment envisioned by the requirements of due process in the light of *Gault*. We would, therefore, recommend that in a contested proceeding, where the minor could be committed to an institution, the juvenile court judge request that the district attorney appear and participate in the hearing to assist in the ascertaining and presenting of the evidence.

*Self-Incrimination*

Steven argues that his extrajudicial admission to Officer Conroy with respect to the possession of the gun was inadmissible because he had not been given a proper or adequate *Miranda* warning. Alternatively, he argues that there is no showing of an intelligent, knowing and voluntary waiver of his *Miranda* rights.

As Steven correctly asserts, the right against self-incrimination is an aspect of due process which must be accorded in juvenile proceedings. (*In re Gault, supra,* 387 U.S. 1, 55 [18 L.Ed.2d 527, 561].) Accordingly, any admission or confession unpreceded by the *Miranda* warnings is violative of the right against self-incrimination and, therefore, inadmissible. These warnings must include an admonition of the right to remain silent; the right to the presence of counsel during questioning; the right to appointed counsel if the accused is indigent; and a warning that anything said by the accused may be used against him. (*Miranda* v. *Arizona,* 384 U.S. 436, 444 [16 L.Ed.2d 694, 706-707, 86 S.Ct. 1602].)

Upon a review of the record we note that all of the *Miranda* warnings were given to Steven. Accordingly, since there was no constitutional error, there is no merit to the contention that Steven's subsequent admission to Probation Officer McDonald of his having had possession of the gun prior to the incident in question was fatally tainted. The *Miranda* admonitions are not required before each meeting of the accused and the police authorities which is determined to be a custodial interrogation; but one warning of the *Miranda* rights adequately given is sufficient for subsequent interrogations. (*People* v. *Brockman,* 2 Cal.App.3d 1002, 1006 [83 Cal.Rptr. 70]; *People* v. *Johnson,* 70 Cal.2d 469, 476 [74 Cal.Rptr. 889, 450 P.2d 265].) Since neither of his extrajudicial admissions offended the constitutional requirements, Steven cannot be heard to claim that his in-court admission of such prior possession was the result of the taint of the out-of-court admissions.

Adverting to the assertion that Steven did not knowingly and intelligently waive his *Miranda* rights, notwithstanding the *Miranda* admonitions, we first observe that there can be no presumption of a knowing and intelligent waiver. The waiver must affirmatively appear of record. (*People* v. *Stewart,* 62 Cal.2d 571, 581 [43 Cal.Rptr. 201, 400 P.2d 97]; *People* v. *Lilliock,* 62 Cal.2d 618, 622 [43 Cal.Rptr. 699, 401 P.2d 4]; *Miranda* v. *Arizona, supra,* 384 U.S. 436, 475 [16 L.Ed.2d 694, 724].)

In *People* v. *Lara,* 67 Cal.2d 365, 376 [62 Cal.Rptr. 586, 432 P.2d 202], the Supreme Court, in discussing the issue of an intelligent and knowing waiver by a minor, observed that race, age, experience with police, educa-

tion, mental and physical condition at the time of questioning, and level of intelligence were all factors to be considered in assessing waiver. (See *Blackburn* v. *Alabama,* 361 U.S. 199, 205 [4 L.Ed.2d 242, 247, 80 S.Ct. 274]; *People* v. *Sanchez,* 65 Cal.2d 814, 825-826 [56 Cal.Rptr. 648, 423 P.2d 800].) In making the assessment all relevant circumstances in the entire record must be received. (*People* v. *Lara, supra,* at p. 376; *In re Johnson,* 62 Cal.2d 325, 335 [42 Cal.Rptr. 228, 398 P.2d 420]; *Johnson* v. *Zerbst,* 304 U.S. 458, 464 [82 L.Ed. 1461, 1466, 58 S.Ct. 1019].)

Whether a minor has waived his rights intelligently and knowingly is a question of contextual fact. (*People* v. *Lara, supra,* 67 Cal.2d 365, 379; *In re Dennis M., supra,* 70 Cal.2d 444, 463; *People* v. *Brockman, supra,* 2 Cal.App.3d 1002, 1008.) Procedurally, the determination of the issue is primarily a question for the trial judge and his determination will not be disturbed unless, in the light of applicable principles, it is palpably erroneous. (*People* v. *Brockman, supra; People* v. *Stafford,* 240 Cal.App.2d 422, 424 [49 Cal.Rptr. 598].)

On the facts before us, we cannot say Steven's waiver by admission was not knowing and intelligent. Steven was given, in clear, concise, and wholly understandable language, prior to any questioning, all of the *Miranda* admonitions. He was again warned at the police station, whereupon he read and signed an admonition card. Steven is a 16-year-old minor with a good deal of prior police contact. In five prior incidents he was given the *Miranda* warning. Further, there is of record no evidence that Steven was below average intelligence or awareness or that he was physically or mentally fatigued at the time of questioning. Accordingly, on these facts we conclude that Steven's admission was made pursuant to a knowing and intelligent waiver of rights.[12]

At oral argument Steven's counsel cited the case of *Freeman* v. *Wilcox,* 119 Ga.App. 325 [167 S.E.2d 163] for the proposition that the *Miranda* warning must be given to both the juvenile and his parents before any in-custody interrogation may take place. The rationale of *Freeman* is that such a requirement is demanded by *Gault* since the confession examined in that case and found unacceptable was one made with a parent present. (P. 166.) We do not so interpret the *Gault* decision; nor has such interpretation been made by our California Supreme Court. In *In re Dennis M., supra,* 70 Cal.2d 444, the Supreme Court, in applying the *Gault* decision to the case before it, held a warning given to the minor alone was sufficient

[12]We reach this conclusion not unaware of the fact that defendant was not asked if he understood the warnings. Nonetheless, we think it is not unreasonable for the trial court to have assumed, in view of defendant's prior police contacts, that defendant had understood.

because from the totality of the circumstances there was substantial evidence that the minor had the capacity to understand the meaning of the warnings given and that he knowingly and intelligently waived his rights. (Pp. 462-465.) Relying upon the *Lara* case the court made this observation: "We recognized that the advice and consent of an adult in this connection 'is of course to be desired, and should be obtained whenever feasible,' but we concluded that 'whether a minor knowingly and intelligently waived these rights is a question of fact; and a mere failure of the authorities to seek the additional consent of an adult cannot be held to outweigh, in any given instance, an evidentially supported finding that such a waiver was actually made.' " (Pp. 462-463.)

The order is reversed.

Sims, J., and Elkington, J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied August 26, 1970.