## 43854. FREEMAN v. WILCOX, Director.

WHITMAN, Judge. ■ This case involves an appeal from a juvenile court proceeding. See *Code Ann.* § 24-2429 (Ga. L. 1951, pp. 291, 308; 1956, pp. 69, 74) regarding manner of appeal. A petition was filed with the juvenile court alleging appellant, Johnny Freeman, to be a delinquent "in that he is charged by the Savannah Police Department with burglary of the Eastside Drug Store, 718 E. Broad Street, Savannah, Georgia on February 20, 1968."

The order appealed from recites as follows: "A hearing being held, allegations in the petition having been sustained, it appearing to the court that the above-named child is in a state of delinquency and in need of correction, it is therefore ordered that said child be and hereby is committed to the Division for Children and Youth, Department of Family and Children Services, for care, supervision and planning as provided in . . . Code Ann. § 99-213 (Ga. L. 1963, pp. 81, 105). The above and foregoing order to remain in force and effect until further order of this court."

*Code Ann.* § 24-2408 (6) (Ga. L. 1951, pp. 291, 297, as amended) gives the juvenile court jurisdiction over a delinquent as long as the court deems necessary until the child attains the age of 21. Freeman is 14 years old.

2. The record before us shows that Freeman was "picked up" on suspicion at his school on March 23rd by one Bobby Jones, a detective. Detective Jones testified at the hearing that Freeman was advised as to the reason he was being "picked up" but that he "denied it" and also that he was "advised of his rights"; that he took Freeman to the Youth Center and left him there; and that the next day he and another detective went back and questioned Freeman but he "still denied it."

The record also shows that Freeman did write out and sign a statement on the *fifth day* of his detention, March 28, in the presence of Detective Jones. The statement is accompanied by a form containing a list of "Your Rights." The list of rights is followed by a paragraph entitled "Waiver of Rights." The form is signed by Freeman.

Freeman was represented by appointed counsel at the delinquency hearing. It was pointed out that Freeman had signed the "Waiver of Rights" form. Freeman testified that he did not know what was on the paper; that he did not know

about his right to an attorney nor had he been told about it; and that he was only in the seventh grade and two grades behind. An objection was made to admission of the confession into evidence on the ground that it had not been affirmatively made to appear that Freeman had been advised of his rights, i.e., he had not been advised thereof in a manner so as to be understood by a person of Freeman's age and intelligence. The objection was overruled and is enumerated as error.

3. Appellant relies heavily upon the case of In Re Gault, 387 U. S. 1 (87 SC 1428, 18 LE2d 527). In that case it was the decision of the Supreme Court that in a delinquency hearing, in which there may be an adjudication of "delinquency," the hearing must measure up to the essentials of due process and fair treatment, i.e., that when there is to be a determination which may result in a juvenile's commitment to an institution in which his freedom is curtailed, the child *and his parents* are entitled to advance notice of scheduled court proceedings setting forth the alleged misconduct with particularity; that the child *and his parents* must be notified of the child's right to be represented by counsel retained by them, or if they are unable to afford counsel, that counsel will be appointed to represent the child; that a child is entitled to the same constitutional privilege against self-incrimination as is available to adults; and that, absent a valid admission or confession, a determination of delinquency and an order of commitment to a state institution cannot be sustained in the absence of sworn testimony subjected to the opportunity of cross examination in accordance with our law and constitutional requirements. With regard to an admission or confession by a child, the court emphasized that, before such could be used against the child, it must be shown by clear and unequivocal evidence to have been made with knowledge by the child that he was not obliged to speak and would not be penalized for remaining silent.

The confession under attack in the present case was obtained during what is usually called the interrogation stage. It does not appear when during this five-day stage Freeman's mother was informed of the matter, but Detective Jones testified that he did talk to her; that he called her and went by her house once. However, he testified that he *did not* advise her of her son's right to counsel. The first question, there-

fore, is the applicability to the present case of the holdings in the Gault case, which, because of the facts therein, were made specifically with reference to the *adjudicatory stage* of the proceeding.

A reading of the opinions in In Re Gault reveals that the fundamental premise of this decision, simply stated, is that the juvenile processes are to be observed, but that they do not exclude or render inapplicable or inoperative the requirements of observance of due process standards in proceedings involving juvenile delinquents or at any critical stage thereof.

In the opinion (p. 47) the court said: "It would indeed be surprising if the privilege against self-incrimination were available to hardened criminals but not to children. The language of the Fifth Amendment, applicable to the States by operation of the Fourteenth Amendment, is unequivocal and without exception. And the scope of the privilege is comprehensive. As Mr. Justice White, concurring, stated in Murphy v. Waterfront Commission, 378 U. S. 52, 94 (1964): 'The privilege can be claimed in any proceeding, be it criminal or civil, administrative or judicial, *investigatory* or adjudicatory . . . it protects any disclosures which the witness may reasonably apprehend could be used in a criminal prosecution or which could lead to other evidence that might be so used.' " And it was further said (p. 41): "We conclude that the Due Process Clause of the Fourteenth Amendment requires that in respect of proceedings to determine delinquency which may result in commitment to an institution in which the juvenile's freedom is curtailed, the child *and his parents* must be notified of the child's right to be represented by counsel retained by them, or if they are unable to afford counsel, that counsel will be appointed to represent the child." (Emphasis supplied.)

Accordingly, according to Gault, the process by which a determination of "delinquency" might be had must be attended with the "essentials of due process and fair treatment" made obligatory on the states by the Due Process Clause of the Fourteenth Amendment of the Federal Constitution. Upon this basis, various components of due process, i.e., those mentioned above in the first paragraph of this division, were declared applicable to the *adjudicatory stage* of a delinquency matter.

Then, what of events transpiring prior to a hearing before the

juvenile judge? In a footnote to its opinion, Gault, supra, at p. 31 (n. 48), the court stated:

"The problems of pre-adjudication treatment of juveniles, and of post-adjudication disposition, are unique to the juvenile process; hence what we hold in this opinion with regard to the procedural requirements at the adjudicatory stage has no *necessary* applicability to other steps of the juvenile process." (Emphasis supplied.)

However, this is not a statement that the holdings of the opinion will have no application to other steps of the juvenile process. Rather, implicit in the statement is an observation that the holdings may indeed have application to other steps of the juvenile process unless they are otherwise obviated by the nature and result of any such other steps. Other language in the footnote indicates that the court made this observation on an apparent desire not to prejudice a recommendation of the National Crime Commission Report that "Juvenile courts should make fullest feasible use of preliminary conferences to dispose of cases short of adjudication"; that such conferences contemplate a "consent decree" procedure in which there is neither an adjudication of delinquency nor institutionalization.

4. Assuming the basic premise of the Gault case, logic would require that the same rights now afforded ordinary citizens through all "critical" stages of the criminal process must be afforded to children in any particular stage of a juvenile delinquency process if the results of any particular stage can have a direct effect on the final determination *and* the final determination may result in a restraint on a child's freedom. For example, if the result of the adjudicatory stage of a delinquency proceeding can be made a foregone conclusion by the results of an earlier stage, then proper protection at the earlier stage is crucial. Of prime importance in determining whether a stage is "critical" is whether information to be elicited from one at that stage will be used or is sought to be used against him at the adjudicatory stage. See Hamilton v. Alabama, 368 U. S. 52 (82 SC 157, 7 LE2d 114); Gilbert v. California, 388 U. S. 263 (87 SC 1951, 18 LE2d 1178) (holding right to counsel at police line-up). Generally see Annot. 5 ALR3d 1269. Cf. *Blake v. State,* 109 Ga. App. 636 (137 SE2d 49), cert. den. 379 U. S. 924 (85 SC 281, 13 LE2d 337).

We are not concerned in this case with a mere preliminary conference. The procedure used here was identical in most respects to that used with criminal suspects. For practical purposes, Freeman was arrested and detained. [The record does not show whether an arrest warrant was obtained beforehand nor was any question raised in this regard. But we note in passing that the Georgia Juvenile Statute states that children are to be taken into custody "in the same manner as . . . an adult under similar circumstances." 'Code Ann. § 24-2416 (Ga. L. 1951, pp. 291, 301; 1955, pp. 581, 582)]. He was advised of his rights (the effectiveness of which was properly questioned), he was interrogated on several occasions and asked to incriminate himself, and finally on the fifth day a confession was obtained. (No question has been raised regarding the length of detention. The statute specifies that the jurisdiction of the court attaches from the time of taking into custody (*Code Ann.* § 24-2416, supra), and thus seems to contemplate that permission of the juvenile court must first be obtained before any interrogation or otherwise may take place.)

The confession examined in the Gault case and found unacceptable was one made *in court* and *with a parent present* (but without knowledge of the right to counsel), but was nevertheless felt to be lacking the certainty and order which such a matter requires since it was not reduced to writing and counsel was not present. In the present case Freeman's confession was solicited out of court with neither counsel nor parent present. If Freeman was advised of his right to counsel and if he understood that right, it is clear from the record that his mother was not so advised. That is a crucial deficiency under the Gault case. *Both must be advised.* And we hold that such right extended to Freeman and his mother prior to his interrogation and the solicitation of the confession.

We think, under the circumstances, that the confession was too suspect as to its procedural purity and its voluntariness to be allowed into evidence against Freeman.

5. Apart from the "confession," there was no other evidence to connect Freeman with the crime or which would support a determination of delinquency.

Appellant's remaining enumerations raise the same basic issue discussed above.

*Judgment reversed. Felton, C. J., and Eberhardt, J., concur.*

330

*Frank B. Zeigler,* for appellant.
*John W. Sognier,* for appellee.