135 Ga. App. 565 (1975)
218 S.E.2d 284
M. K. H.
v.
STATE OF GEORGIA.
50638.
Court of Appeals of Georgia.
Submitted April 30, 1975.
Decided September 2, 1975.
*566 J. Dunham McAllister, for appellant.
William H. Ison, District Attorney, J. W. Bradley, Assistant District Attorney, for appellee.
STOLZ, Judge.
This is the second appearance of this case in this court. See M. K. H. v. State of Ga., 132 Ga. App. 143 (207 SE2d 645), where the appeal was dismissed as being premature. The instant appeal arises from a finding of delinquency and disposition of commitment to the Youth Detention Center. The record attached to the appeal in its earlier appearance reveals several facts which should be considered when reviewing the totality of the circumstances involved in this case. Since these facts were before the juvenile court judge below and are part of the official record in this court, they are available to us as we proceed through the decisional process.
Briefly stated, the offense occurred on December 24, 1973. The boy was arrested on December 27, 1973, one day before his fifteenth birthday. At the time, the child was a student at Riverdale Junior High School. A Cognitive Abilities Test by the juvenile court instructor-counselor made for the juvenile court shortly after his placement in custody, showed the following results: Vocabulary - 4.9 grade level; Reading -5.3 grade level; Spelling - 6.2 grade level; Math - 5.4 grade level. The Otis-Lennon Mental Abilities Test showed a raw score of 20, a conversion I. Q. of 80. The Raven (Progressive Matrices) revealed a performance that was substandard. (R. 15) Psychological examination showed a "Dull Normal (I. Q. 87) Range of Intelligence with slight impairment of abstract reasoning abilities relative to his overall level of functioning ... personality testing suggests the possibility of a latent or incipient schizophrenia which could impair judgment and impulse control." (R. 17)
1. The juvenile court judge erred in allowing the officers to testify as to the hearsay remarks of a co-participant and his mother. We recognize the rule that, in the trial of a case before a judge without a jury, the rules *567 of evidence are less strict. Ward v. State, 26 Ga. App. 61 (105 SE 373). But this does not mean that in such cases the trier of fact can totally ignore the rules of evidence. Hearsay has no probative value. See annotations following Code § 38-301. "It is... a general rule that testimony of a witness that he heard another confess to the crime is inadmissible as hearsay." Martin v. State, 102 Ga. App. 216, 218 (1) (115 SE2d 859) and cits. However, the rule is otherwise where the statement is made in the defendant's presence. Strickland v. State, 115 Ga. App. 278, 279 (2) (154 SE2d 622) and cit.
2. In Freeman v. Wilcox, 119 Ga. App. 325, 329, supra, this court stated: "In the present case Freeman's confession was solicited out of court with neither counsel nor parent present. If Freeman was advised of his right to counsel and if he understood that right, it is clear from the record that his mother was not so advised. That is a crucial deficiency under the Gault case. Both must be advised. And we hold that such right extended to Freeman and his mother prior to his interrogation and the solicitation of the confession. We think, under the circumstances, that the confession was too suspect as to its procedural purity and its voluntariness to be allowed into evidence against Freeman."
The minority seeks to distinguish Freeman on the basis that each case must be judged on its own facts. In that light, let us again return to the facts as revealed in the record before us. On the morning of December 27, 1973, a police car went out to M. K. H.'s residence. There the officers talked with him and asked him if he would voluntarily come to the station and talk about the fire, etc. The boy did so, but under questioning denied any knowledge of the fire and was returned to his residence. (T. 2, 6) Just before M. K. H. was to be returned home, the police received a telephone call from another boy's parents about the fire and their son's involvement. This family arrived at the police station as M. K. H was being returned home. In their conversations with the police, the son confessed to being involved in the burglary and arson. He also implicated M. K. H. Orders were then issued for M. K. H. to be arrested and returned to the police station. (T. 6) There is nothing in the record to indicate that the *568 arresting officer did more than read the "Miranda rights" card to M. K. H. prior to obtaining his confession. (T. 14, 15) No effort was apparently made to determine if the boy knew and understood what was being said to him. While the record does reveal that reasonable efforts were made by the police to contact M. K. H.'s parents, there is no evidence that any effort was made to inform M. K. H.'s aunt, who was at the residence when the boy was initially interviewed, of the seriousness of the situation and the boy's rights in such a case. "(a) A person taking a child into custody, with all reasonable speed and without first taking the child elsewhere, shall: (1) forthwith release without bond the child to his parents, guardian or other custodian upon their promise to bring the child before the court when requested by the court; or (2) bring the child before the juvenile court or deliver him to a detention or shelter care facility designated by the court or to a medical facility if the child is believed to suffer from a serious physical condition or illness which requires prompt treatment. He shall promptly give written notice thereof, together with a statement of the reason for taking the child into custody, to a parent, guardian, or other custodian and to the court. Any temporary detention or questioning of the child necessary to comply with this subsection shall conform to the procedures and conditions prescribed by this Code [Title 24A] and rules of court; or (3) bring the child who committed a delinquent act before the superior court of the county where the delinquent act occurred if the act is an act over which the superior court has concurrent jurisdiction as provided in section 24A-301 (b); however, pending a committal hearing authorized under Chapter 27-24 or indictment, such child shall be returned and placed in detention, if necessary, only in such places as are authorized by section 24A-1403." Code Ann. § 24A-1402 (a) (1-3) (Ga. L. 1971, pp. 709, 723; 1973, pp. 882, 885). Here, the boy was arrested (taken into custody) at his home and carried directly to the police station where the interrogation took place. The statute specifically directs the person taking a child into custody to follow one of the three courses previously quoted "without first taking the child elsewhere." (Emphasis supplied.) The police station would *569 certainly qualify as being "elsewhere" under the statute. The record shows that an aunt (custodian) was at the residence (T. 6) and that Clayton County has a juvenile detention center. (T. 7, 8) Nothing in the record indicates the existence of an emergency situation which would excuse the officers from following the procedures outlined in Code Ann. § 24A-1402 (a) (1-3), supra.
Further, the record does not reveal that any effort was made by the arresting officers to determine if the child understood what was being said when the "Miranda rights" card was read to him. As previously noted, the juvenile involved was almost fifteen years of age, yet had a vocabulary which was at the 4.9 grade level, reading at the 5.3 grade level, spelling at the 6.2 grade level, math at the 5.4 grade level, and had a "dull normal (I. Q. 87) range of intelligence with slight impairment of abstract reasoning abilities relative to his overall level of functioning ... [with] the possibility of latent or incipient schizophrenia which could impair judgment and impulse control."
The adjudication of delinquency was based on hearsay evidence and had no probative value. We believe, "under the circumstances, that the confession was too suspect as to its procedural purity and its voluntariness to be allowed into evidence..." Freeman v. Wilcox, supra. No explanation appears in the record giving us the reason for the state's failure to produce the direct evidence which was available at the juvenile hearing. The state may have had a sound case against M. K. H., but did not present it at the proper time. The adjudication of delinquency was not supported by sufficient competent evidence and therefore must be reversed.
Judgment reversed. Bell, C. J., Quillian, Clark and Webb, JJ., concur. Evans, J., concurs specially. Pannell, P. J., Deen, P. J., and Marshall, J., dissent.
EVANS, Judge, concurring specially.
I voted originally with Presiding Judge Deen's dissent, concurred in at that time by Judges Pannell and Marshall, but I had some misgivings because of the case written by Judge Whitman, to wit, Freeman v. Wilcox, 119 Ga. App. 325 (167 SE2d 163), and suggested to Judge *570 Deen that it ought to be overruled, as it seemed to conflict with the case now under consideration, and I felt that this court, under the rule of stare decisis, is bound by the older decision of this court on the same point.
Accordingly, Judge Deen indicated his willingness to disapprove Freeman, supra; but it cannot be disapproved with less than five votes, and we simply don't have enough votes. Therefore, I reluctantly vote with the majority because of our failure to overrule the Freeman case.
DEEN, Presiding Judge, dissenting.
1. I am in sympathy with the majority view in this case, and dissent primarily to call to attention some of the difficulties arising from rigid application of rules obtaining on the full-blown trial of adult criminal offenders to all juvenile court proceedings. The final order of the judge entered January 16, 1975, shows that this delinquent was born December 28, 1957, which made him four days short of his sixteenth (not fifteenth) birthday at the time of the arson, over sixteen at the time of the adjudicatory hearing, and over seventeen at the time of the dispositional hearing. He will reach the age of majority this year. "In the absence of evidence to the contrary, evidence sufficient to warrant a finding that acts have been committed which constitute a felony is also sufficient to sustain a finding that the child is in need of treatment or rehabilitation." Code Ann. § 24A-2201. The conduct of the hearing differs markedly from criminal trials in that there is no jury, the public is excluded, the child himself may sometimes be excluded, and the proceeding is geared to getting to the facts of the case and the needs of the child as soon as possible. Code Ann. § 24A-1801.
Here the juvenile was represented by counsel at both adjudicatory and dispositional hearings and offered no evidence at either. Most of the evidence offered had to do with the nature and extent of the fires set throughout the schoolhouse, mindlessly destructive and expensive acts of vandalism which in and of themselves suggest a need for treatment, if not punishment, of some kind. There is not and never has been any suggestion either that this juvenile's confession was coerced or that it was false in any particular. While I agree that the testimony *571 regarding the confession of this boy's companion was hearsay and inadmissible to prove participation, its introduction for the purpose of showing why Michael, who had previously denied participation in the affair, immediately changed his story on learning that the companion and the latter's parents were at the police station for the purpose of telling the truth about the occurrence, effectively demonstrates the motivation behind the confession. There is no denial that his rights, including right to counsel, were given him and that he understood them. In my opinion there is some burden on the appellant at this point, where the law has been complied with so far as the record shows, to indicate the manner in which he contends he has been harmed.
2. This leaves only the question of whether the confession should have been accepted in the absence of Michael's parents. Lott testified that when he went to the house he first asked to see if Mike's parents were home. They were not. There was an aunt present. She was informed that there had been a fire at the school and the officers wanted to talk to Mike, and she made no objection. Mike was asked, and readily agreed that he did not mind going to the station or talking about the fire. This was the first confrontation, after which he was returned home. There is some hazy indication in the record that the mother was institutionalized. Three attempts were made to communicate directly with the parents before the confession was taken, after the boy was finally arrested. The officers seem to have done everything they reasonably could to protect the juvenile's rights, but as I understand the majority opinion it holds that where it is impossible to locate the family everything must be held in abeyance, at least until an attorney is appointed, and almost any questioning will be illegal. Strong reliance for this position is placed on Freeman v. Wilcox, 119 Ga. App. 325 (1967 SE2d 163). Citing In re Gault, 387 U. S. 1, this court held in Freeman: "In the present case Freeman's confession was solicited out of court with neither counsel nor parent present. If Freeman was advised of his right to counsel and if he understood that right, it is clear from the record that his mother was not so advised. That is a crucial deficiency under the Gault case. Both must be *572 advised. Gault, however, was discussing a confession actually made during a hearing in which neither the child nor his parents had been informed either of their right to counsel or of the charges against the juvenile, nor had either been served with process. Gault and Freeman stand for the proposition that both the juvenile and his parents must be informed of their constitutional rights at the first possible opportunity, but Gault does not unequivocally say that no confession will be received unless the parent is informed, or that no contact at all is permitted until after the parents have been located. Freeman was a fourteen-year-old child; his confession was obtained during a five-day custody period. This appellant of approximately sixteen years had denied participation in the arson and had returned home; after being again detained and told that his companion had confessed he immediately retracted the denial and admitted his part in the arson. Under like conditions, the confession of a fifteen-year-old juvenile in Cotton v. United States, 446 F2d 107, was upheld against the contention that he could not effectively waive his constitutional rights. The same question was raised in United States v. Miller, 453 F2d 634 (where the mother was at least aware of the arrest) and the court held: "In determining whether any individual, be he juvenile, or adult, has intelligently waived his constitutional rights, it is necessary to examine the totality of the circumstances. Each case is to be separately considered from the subjective viewpoint of the individual who is being questioned. Particularly when the suspect is a juvenile, he may not truly understand the rights about to be waived. The mere recital of the form of official warning, or the presentation of a copy of the warning to be read, with no additional effort at clarification by the interrogating officer may not be enough in many cases to insure that a juvenile knows and understands the possible consequences of any statement he may make." The confession was there held to be admissible. Again in West v. United States, 399 F2d 467, the waiver of rights by a confessing juvenile of sixteen was upheld. And in Jones v. State, 119 Ga. App. 105 (166 SE2d 617) we upheld the waiver and confession of a sixteen-year-old juvenile although in the absence of *573 counsel where "the defendant both orally and in writing waived the right to counsel during interrogation, never attempted to withdraw the waiver, and made no showing that the refusal of counsel at certain pre-trial investigative interrogations was due to any lack of understanding on his part of his rights or of the issues involved."
In re Gault, 387 U. S. 1, supra, p. 48, notes that the New York statute specified that police must attempt to communicate with the juvenile's parents before questioning him (which was done in the present case), and that failure to do so (In re Williams, 49 Misc. 2d 154 (267 NYS2d 91)), if not alone sufficient to void the confession, is germane to the question of voluntariness.
Where all factors suggest both that the confession was voluntary and that the juvenile in reality did fully understand his rights, where no coercion or pressure to make a statement is claimed, and where the officers did in fact make every reasonable effort to contact the parents prior to the interview, the confession should not be excluded merely because the parents were not first located and advised of the right to counsel. These cases must, as stated in Cotton, supra, be judged on their own facts. A five-day detention, such as occurred in Freeman's case, prior to the statement, together with testimony that he had not been instructed and did not understand his right to counsel, and further unchallenged testimony that the parents, who had been located, had not been informed, makes a strong showing and is reversible error. That is not the case here. The aunt, who was in charge, was notified of the purpose of questioning. A triple effort to locate the parents failed. I am not willing to say that no effort may ever be made to question a child, where his parents are unavailable, until an attorney is present, because I do not believe this is the rule enunciated by In re Gault, nor do I think it is in the interest of either the child or society.
I am authorized to state that Presiding Judge Pannell and Judge Marshall concur in this dissent.