## 50787. J. J. v. STATE OF GEORGIA.

ARGUED JUNE 25, 1975 — DECIDED SEPTEMBER 3, 1975.

*David G. Kopp,* for appellant.
*Joseph H. Briley, District Attorney, Donald W. Huskins, Assistant District Attorney,* for appellee.

CLARK, Judge. ·

"Since this involves a question that has not yet been decided by our appellate courts, the best we can do is to make a guess as to their ultimate decision." Words of similar import have frequently been stated by lawyers in advising clients. Trial judges too have made such comments when dealing with interpretations of new statutes. While laymen may express surprise because of the often expressed truism that "We are a nation of laws, not men," the fact is that it is men[1] who legislate, interpret, and apply the laws.

Those rueful ruminations are not to be construed as

---

[1]The use of this male pronoun instead of "Persons" as

legalistic lampooning. They have a special application to our Juvenile Court Code. Since the passage in 1971 of this salutary legislation[2] encompassing a change in the philosophy and a modernization of legal treatment of juveniles a considerable number of cases have come to our appellate courts. During the pendency of these appeals our trial tribunals necessarily proceeded with their "best guess" as to procedure and ultimate determination. Thus, in the instant case, we find it necessary to reverse the rulings of an erudite and well-intentioned jurist by reason of decisions rendered after this case had been tried below and of which he could not have then been informed.

Appellant, a 16-year-old male, was arrested at a bank while attempting to cash a check which was one of a number of payroll checks stolen during a nighttime burglary. As there was no available juvenile detention facility the youngster was taken to the Greensboro City Jail. He was there questioned while an effort was made to locate his parents. During the course of such interrogation he made certain incriminating statements which were admitted over objection at the trial. This trial was neither an adjudicatory nor dispositional hearing, but was limited to determination as to whether the juvenile court should transfer jurisdiction to the Greene County Superior Court. As such it is governed by the provisions of Chapter 24A-25 captioned "After Petition Transfers."

This appeal is from a judgment which denied the juvenile's "Motion Opposing Transfer to Superior Court."

Appellant's eloquent and extensive briefs have proposed the issues of law in the form of four specific questions. We adopt those questions in the language as therein presented.

■ Does a superior court have constitutionally granted jurisdictional power to try a juvenile defendant

---

urged by feminists should not be considered as that of a chauvinistic sexist.

[2] "It has been stated that the juvenile court laws of this country are the most outstanding improvement in the administration of criminal justice since the Magna Charta was signed." State v. Jackson, 249 Minn. 246, 249 (82 NW2d 234).

accused of an offense or offenses for which the maximum criminal penalty is neither life imprisonment nor death? "Yes" is our answer. We can not accept appellant's argument that sole and exclusive jurisdiction has been vested in the juvenile court.

Since the time this case was tried, our Supreme Court has settled in *J. W. A. v. State of Ga.*, 233 Ga. 683 (212 SE2d 849) the previously persisting perplexing problem of jurisdiction. Its ruling was that in juvenile felony cases other than those involving punishment by death or life imprisonment the superior court and the juvenile court have concurrent jurisdiction. Justice Conley Ingram's opinion specifically noted in the last paragraph on page 685 and continuing over to the next page that the language of the 1972 constitutional amendment *"preserved the superior court jurisdiction* but also authorized concurrent original jurisdiction to be placed in the juvenile courts . . ." (Emphasis supplied.) This decision effectively overruled those cases which had held that a grand jury indictment ipso facto divested the juvenile court's jurisdiction.

The statutory plan of the 1971 Juvenile Court Code supplemented by the 1972 Constitutional Amendment provides for the juvenile court to possess "exclusive original jurisdiction over juvenile matters and [that it] shall be the sole court for initiating action. . ." (Code § 24A-301). Translated from legalese into the common vernacular, this means the juvenile judge is to have first crack at the youngster. It is for the juvenile judge initially to use his expertise to decide if the child can be rehabilitated. Should he decide the juvenile lacks the potential for conversion into a good citizen and the case in all likelihood will meet the transfer requirements prescribed by the statute, he then institutes the procedure set forth in Chapter 24A-25 for transferring the case to another forum.

■ May a juvenile court transfer a juvenile case to an appropriate court having jurisdiction without first hearing evidence sufficient to give the court reasonable grounds to believe that the child is not amenable to treatment or rehabilitation through available facilities? Our answer to this question is "no."

Code § 24A-2501 spells out the transfer procedure. In the comment under this section as prepared by the legal counsel to the various study commissions which drafted the Juvenile Court Code it is stated that, "This section is designed for two major purposes: one, to require a hearing on the issue of transfer if the juvenile court is considering relinquishing jurisdiction; and two, to define the procedures and requirements governing such transfer hearings."

In *D. M. N. v. State of Ga.*, 129 Ga. App. 165 (199 SE2d 114) our court restated these codal requirements for the juvenile court relinquishing its exclusive original jurisdiction. In addition to (1) a hearing and (2) notice thereof, our court stated that, "3. The court must find there are reasonable grounds to believe the following: (a) The child committed the delinquent act alleged; (b) He is not amenable to treatment or rehabilitation through available facilities; (c) He is not committable to an institution for the mentally retarded or mentally ill; (d) The interest of the community requires that the child be placed under legal restraint or discipline; and (e) The child was at least 15 years of age at the time of the alleged delinquent conduct. Code Ann. § 24A-2501 (a) (3), (4), supra."

That case also noted that the burden of meeting these requirements is upon the state.

In the instant case the evidence fails to meet these statutory requisites.

■ Was there in fact sufficient evidence presented in this case to give the juvenile court reasonable grounds to find that the appellant was not amenable to treatment or rehabilitation through available facilities? The answer to this is also in the negative.

The trial transcript shows that the judge had personal knowledge of the appellant having recently been discharged from a Youth Development Center. But no evidence was presented as to this incarceration and the causes. Since the statute requires the state to show "reasonable grounds," there must be testimony as to the rehabilitation possibilities or absence thereof in the record to meet the "due process" requirements granted juveniles by the Supreme Court cases of In re Winship,

397 U. S. 358 (90 SC 1068, 25 LE2d 368) and Kent v. United States, 383 U. S. 541 (86 SC 1045, 16 LE2d 84). These would include confrontation and cross examination of witnesses.

It should also be noted that the juvenile is expressly granted the same rights of appeal as are possessed by adults. Code § 24A-3801. In order for an appellate court to determine if the state has carried the burden of proving that the child is not amenable to rehabilitation, there must be evidence in the record for consideration in the appellate court.

■ Are the statements of a juvenile, made in non-juvenile detention before the requirements of Georgia juvenile law concerning detention have been complied with, and in the absence of the juvenile's parents, and prior to contact with such parents by the juvenile authorities, and in absence of knowledge on the juvenile's part that his parents can be present if he so desires, admissible against him in a juvenile court proceeding? The answer again is in the negative.

The facts in the instant case are similar to those recently ruled on in *M. K. H. v. State of Ga.*, 135 Ga. App. 565. Headnote 2 of that case states that "A confession obtained from a juvenile under circumstances in violation of Code Ann. § 24A-1402 (a) (1) (2) (3) and the decision in *Freeman v. Wilcox*, 119 Ga. App. 325 (167 SE2d 163) is inadmissible in a hearing to determine the delinquency of a juvenile."

It was therefore error to admit over objections the incriminating statements made in jail by the juvenile in the absence of his parents and where the police officers had proceeded to quiz the juvenile before compliance with the statutory prerequisites. See also *Daniels v. State,* 226 Ga. App. 269 (174 SE2d 422) and West v. United States, 399 F2d 467.

Supplement [3] to Opinion.

This case presents the first instance of a juvenile

---

[3]This addition to our opinion is intended as a caveat to guide our lawyers and juvenile court judges concerning procedure.

jurisdictional transfer decision coming to our court since the opinion recently rendered (May 25, 1975) by the United States Supreme Court in Breed v. Jones, 421 U. S. — (95 SC 1779, 44 LE2d 346). Our nation's top tribunal there unanimously mandated that double jeopardy barred prosecution in a California superior court after a juvenile court's adjudicatory finding that the accused had violated a criminal statute and that he was "unfit for treatment as a juvenile."

In the case at bar the trial judge followed the course indicated by Code § 24A-2501 for the jurisdictional transfer hearing to be conducted prior to the adjudicatory trial. Chief Justice Burger's opinion recognizes that "A requirement that transfer hearings be held prior to adjudicatory hearings affects not at all the nature of the latter proceedings." 44 LE2d 360.

*Judgment reversed. Pannell, P. J., and Quillian, J., concur.*