351 So.2d 927 (1977)
Johnny Ray PARKER
v.
STATE.
8 Div. 905.
Alabama Court of Criminal Appeals.
May 3, 1977.
Rehearing Denied June 7, 1977.

*929 On Rehearing
BOWEN, Judge.
The opinion of this court issued March 29, 1977, is hereby set aside and withdrawn. The following opinion becomes the opinion of the court.
The appellant was indicted for the first degree murder of Christine Lott. A petit jury found him guilty of murder in the second degree and fixed his punishment at fifty years imprisonment in the penitentiary. Judgment and sentence by the trial court were accordingly entered. Because the appellant was found to be indigent, counsel was appointed to represent him both at trial and on appeal.
The major contention of the appellant is that the trial court erred in refusing to suppress the confession of the appellant (1) because it was involuntary when considered in light of the totality of the circumstances and (2) because the appellant was a juvenile and did not have the capacity to waive his rights under the Fifth and Sixth Amendments of the Constitution of the United States.
At a hearing outside the presence of the jury to determine the admissibility of the confession, the state presented the testimony of two detectives of the Decatur Police Department. Their testimony established the fact that the appellant was the main suspect in the murder case of Christine Lott which they were investigating. Around 8:30 on the morning of March 4, 1976, they went to the appellant's home which was located approximately seventy-five yards from the scene of the crime. The detectives told the mother of the appellant that they wanted to talk to her son about "what happened at the L & H Salvage Yard" and *930 the murder of Mrs. Lott. Mrs. Parker then told the officers that her son had stated that he "saw some negroes up there". She invited the detectives into her house where they talked to the fifteen year old appellant with his mother present.
The appellant was asked and agreed to talk to the detectives in their police car. Once in the car, the appellant was advised of his constitutional rights and questioned for five or ten minutes. During this time, Mrs. Parker was either in the front yard or by the front door of the house.
The appellant agreed to go with the detectives to the police station for further questioning. Mrs. Parker was told that her son was going to be taken to the police station and would be brought back home "if everything turned out all right". Although the appellant was the "prime" suspect in Mrs. Lott's murder, Mrs. Parker was not informed that her son was a suspect.
Arriving at the police station shortly after 9:00 A.M., the appellant was again advised of his rights. He read a waiver of rights form and signed a written waiver of his constitutional rights at 9:25 that morning. Detective Collier testified that the appellant stated that he understood his rights before signing the waiver form. He also testified that no threats, coercion, intimidation, offer or promise of reward or hope of reward, or leniency "or anything of that nature" was extended to the appellant in order to induce him to make a statement. Three police officers were present during the questioning of the appellant.
The appellant was confronted with statements made by other parties the police had previously questioned in their investigation which conflicted with his answers. At least two of the three officers present told the appellant that they thought the appellant was lying and that he should go ahead and tell the truth. There was testimony from one of the officers that he was nervous and "afraid that he was going to get killed if he told us who it was". The appellant was accused of committing the murder and told by Detective Collier that he "thought he would feel better about it if he told us the truth and asked for forgiveness".
At that point the appellant began crying, confessed to the murder and recited the details of the crime. The total interrogation had consumed forty-five minutes. The three police officers and the appellant went out to the scene of the murder. The appellant recounted and re-enacted the events and then showed the officers where he had hidden the money he took from Mrs. Lott's body.
The appellant was taken back to police headquarters and again advised of his rights and signed a second waiver form at 1:05 P.M. The appellant recited the entire sequence of events and Detective Collier wrote it down. The appellant read the confession, stated that it was true and signed it. This confession was completed at 2:20 P.M.
The juvenile authorities were advised around "noon" that the appellant had been "picked up". While the appellant was being questioned one of the detectives who brought the appellant to police station filed a petition with the juvenile court to invoke the jurisdiction of that court. The appellant was in the custody of the police and not the juvenile authorities when he confessed.
Mrs. Parker, the mother of the appellant, testified that the detectives only talked with her son in the police car and would not let her be with him during that time. They also would not let her give the appellant a "coke" when she brought one out to the car. She testified that one of the detectives told her that they were going to carry Johnny up to the police station "for him to sign a statement that he hadn't been down at Lott's store yesterday". The detectives would not let Mrs. Parker go with her son to the police station and told her that they would bring him back in "a little bit".
A report from the "Mental Health Center" on the I.Q. of the appellant was admitted into evidence at the hearing on the motion to suppress but was not included in the transcript of the court reporter. At trial, the defense called William S. Lucus, *931 Jr., Chief of the Out-Patient Services of the North Central Alabama Mental Health Center. He testified that the appellant was very weak in the general comprehension of factual information, common sense, judgment and reasoning. The appellant was a "slow learner" slow in the area of vocabulary. Mr. Lucus administered the Weschler Adult Intelligent Scale test consisting of three general levels of competency: (1) A verbal scale, (2) a performance scale, and (3) a full scale. On the verbal scale the appellant had an I.Q score of 81 with 90 to 110 being the normal range. On the performance scale, the appellant scored within the normal range with an I.Q. of 96. On the full scale, the appellant's I.Q. was 87, just three points below normal. An additional test administered to the appellant revealed no organic brain damage and no extreme emotional instability.
The appellant did not testify at the hearing on the motion to suppress or at trial.
This concluded the hearing on the motion to suppress the confession. The trial court found that the evidence presented a question of fact and refused to suppress the confession.
During the course of the trial and before the confession was admitted into evidence before the jury, the trial judge offered to defense counsel two additional opportunities to introduce evidence on the initial voluntariness and admissibility of the confession. However, defense counsel refused these opportunities and declined to present further testimony on this issue.
At trial, the state presented the testimony of Carl Green who testified that he saw the appellant within three hundred yards of the store of the deceased on the day of the murder. Detective Collier testified substantially as he did on the hearing to determine the admissibility of the confession. A state toxicologist stated that based upon his examination, Mrs. Lott had been strangled to death. Expert testimony was also presented to show that a fingerprint lifted from the vacuum cleaner rod or wand to which the rope was tied that went around the victim's neck belonged to the appellant.
The defense presented the testimony of the parents and relatives of the appellant to show that the appellant had an unhappy home and family life, that his father would become intoxicated and beat him, that the appellant did not like school and that the appellant had difficulty controlling his bowel movements when he was younger. Additional testimony revealed that the appellant read at a fifth grade level.
The confession given by the appellant is dated at 2:20 P.M., March 4, 1976. Court records and orders evidence that at 2:00 P.M. on that same afternoon, counsel was appointed to represent the appellant. At 4:30 P.M. that same afternoon, the appellant and his attorney appeared before the Juvenile Division of the Morgan County Court along with a probation officer and the appellant was advised as to the petition alleging his delinquency for the commission of the offense of murder in the first degree and robbery. That order of the court reflects that:
"The youth is advised of his rights under the law and questioned only as to his care since the time he was taken into custody earlier on this date. He advised the court that he has been under no duress or coercion. He has not been injured, threatened, denied food or other necessary comforts."
The court ordered the appellant detained in the city jail pending his detention hearing. This hearing was held the next day, March 5, 1976. After testimony was taken and evidence presented the juvenile court found that just and reasonable cause existed to detain the appellant, without bond, pending further proceedings.
On March 16, 1976, the juvenile court, on motion of defense counsel, ordered physical and mental examinations of the appellant.
On April 30, 1976, the juvenile court, after an evidentiary hearing, ordered jurisdiction of the cause transferred to the circuit court where the appellant would be treated as an adult. In making this order the juvenile court took into consideration the fact that the appellant had been found *932 delinquent at the age of fifteen and at the time of the murder was already on probation for an unrelated offense. The court also received evidence relative to the social history of the appellant and his family, his physical and mental condition, and his past behavior.

I
The appellant contends that the Morgan County Court, Juvenile Division, erred in transferring jurisdiction of the cause against the appellant to the circuit court because it failed to make a prior determination of delinquency.
In Seagroves v. State, 279 Ala. 621, 189 So.2d 137 (1966) the Alabama Supreme Court set forth the proper procedure to be followed before ordering a transfer from the juvenile court. The juvenile court must determine (1) that the child is delinquent and (2) cannot be made to lead a correct life or be properly disciplined. Rudolph v. State, 286 Ala. 189, 238 So.2d 542 (1970).
On April 30, 1976, the county court of Morgan County, Juvenile Division, heard evidence on the petition of the state to transfer the appellant to the jurisdiction of the circuit court for criminal prosecution. The court heard testimony concerning the home and social history of the appellant and his family and the lack of supervision provided for him by his parents. It was noted that the appellant had previously been declared delinquent at the age of fifteen years and was, in fact, on probation at the time of the murder. Evidence was submitted and heard concerning the period of time the appellant was on probation and his behavior during that time. A comprehensive statement and report of the medical, mental, and psychiatric condition of the appellant was taken into consideration.
In ordering the transfer, the juvenile court specifically found that:
"After a careful investigation and a consideration of the disciplinary measures, the facilities and programs available to the court, it is the judgment and opinion of the court that the subject youth, Johnny Ray Parker, is not amenable to the care, treatment and training programs available to the facilities of the Juvenile Court and he cannot be made to lead a correct life and cannot be properly disciplined under the provisions of the Juvenile Court Statutes of the State of Alabama."
It is not necessary that the court specifically find that the appellant was delinquent. A finding that he was incorrigible necessarily includes a finding of delinquency. Steele v. State, 289 Ala. 186, 266 So.2d 746 (1972). This is because Title 13, § 350(3), Code of Alabama 1940 defines "delinquent child" as:
". . . any child who while under sixteen years of age violates any penal law of this state or of the United States, ..; or who is beyond the control of his parent, parents, guardian, or custodian, or who is otherwise incorrigible, . ."
Black's Law Dictionary, 4th Edition, defines "incorrigible" as:
"Incapable of being corrected, amended, or improved; with respect to juvenile offenders, unmanageable by parents or guardians."
The findings of the juvenile court in this case were tantamount to a finding of "incorrigibility" and "delinquency" within the meaning of the statute. The transfer of the appellant to the jurisdiction of the circuit court was properly conducted and the appellant was properly adjudged delinquent.

II
The final and primary contention of the appellant is that the circuit court erred in refusing to suppress the confession because of (1) the totality of the circumstances and (2) because the appellant as a juvenile did not have the capacity to waive his rights under the Fifth and Sixth Amendments to the Constitution of the United States.
A confession is not inadmissible, in the absence of a statutory provision to the contrary, merely because the person making *933 it is a minor. In Clarke v. State, 51 Ala.App. 222, 225, 283 So.2d 671, 673 (1973) we held that:
"We subscribe to the general proposition that the confession of a minor is not ipso facto inadmissible; however, infancy is certainly a relevant factor bearing upon the voluntariness, vel non, of a confession. 23 C.J.S. Criminal Law § 829; 87 A.L.R.2d 624; Burton v. State, 107 Ala. 108, 18 So. 284. The better rule appears to equate the capacity required for a valid confession with that prerequisite to criminal responsibility. We conclude from Burton, supra, that generally a person whose age and mental faculties make him amenable to criminal sanctions is sui juris in matters relating to confessions and inculpatory admissions." (Emphasis added)
In Alabama, there are two statutory provisions dealing with the confession of a minor: (1) Title 13, § 377, Code of Alabama 1940, and (2) Act No. 1205, § 5-125, Acts of Alabama 1975, approved October 10, 1975 (The Judicial Article Implementation Act).
Title 7, § 377 specifically forbids the use of any voluntary confession of a "dependent, neglected or delinquent child" made "to the probation officer or court" in reference to any cause or matter in the juvenile court, as evidence against the child "for any purpose" in other cause, court, or proceeding. This section creates an exception to the general rule set out above and by its very language is applicable where the confession is made (1) to a probation officer or a juvenile court and (2) in connection with matters and proceedings had therein.
The evidence in this case discloses that the confession was given in the presence of three police officers. There was no probation officer present. Therefore the situation arising in Clarke, supra, (two police officers and a probation officer present) does not present itself in this case. We particularly note, that in Alabama, there is no statutory requirement that a police officer taking a minor into custody for an offense, take him immediately before the juvenile court or deliver him to the juvenile officer or person acting for him. Here the confession was made after the appellant was in the custody of the police but before the petition invoking the jurisdiction of the juvenile court was filed. See State v. Arbeiter (Mo.) 408 S.W.2d 26 (1966). The "McNabbMallory rule" is that a confession may be excluded by the federal court because of unnecessary delay in bringing the arrested defendant before a United States Commissioner. This is a federal procedural rule; it is not predicated upon the Fourteenth Amendment and has no application to state trials. Federal Rules of Criminal Procedure, Rule 5(a), 18 U.S.C.A.; Hutto v. State, 278 Ala. 416, 178 So.2d 810 (1965); Fikes v. State of Alabama, 352 U.S. 191, 77 S.Ct. 281, 1 L.Ed.2d 246, rehearing denied, 352 U.S. 1019, 77 S.Ct. 553, 1 L.Ed.2d 561 (1957). A confession is not inadmissible solely because it was made after arrest by an officer and before the accused was taken before a committing magistrate, Smith v. State, 291 Ala. 507, 282 So.2d 907 (1973); Austin v. State, 56 Ala.App. 307, 321 So.2d 272 (1975) or because of the illegal detention of the accused, Hegmon v. State, 50 Ala.App. 486, 280 So.2d 192 (1973); Bridges v. State, 284 Ala. 412, 225 So.2d 821 (1969) although these factors are relevant for consideration in determining the voluntariness of a confession. Therefore Title 7, § 377 does not mandate the exclusion of the confession in the instant case.
The second statutory provision concerned with the confession of a minor is § 5-125 of Act 1205, Acts of Alabama 1975, approved October 10, 1975, which reads as follows:

"Unless advised by counsel, the statements of a child or other information or evidence derived directly or indirectly from such statements made while in custody to police or law enforcement officers or made to the prosecutor or probation officer, during the process of the case, including statements made during a preliminary inquiry, predisposition study, informal adjustment, or consent decree, shall not be used prior to a determination *934 of the petition's allegations in a delinquency or in need of supervision case or in a criminal proceeding prior to conviction." (Emphasis supplied)
Thus, the confession of the appellant was clearly inadmissible pursuant to the above statute.
However by resolution and order of the Alabama Supreme Court dated December 1, 1975, in creating "an advisory committee to make recommendations for rules of administration, practice and procedure in juvenile courts", the Supreme Court declared that:
"WHEREAS, The Supreme Court of Alabama, in reviewing Act No. 1205, Acts of Alabama 1975, approved October 10, 1975, concludes that Article 5 shall become effective January 16, 1977, statutory provisions currently effective remaining in full force and effect until that time; . ."
The Resolution cites as its authority Article 6, § 150, Constitution of Alabama (Article VI, Section 6.11, ratified December 27, 1973) and Act 1205 itself (see specifically Sections 6-102, 6-105). This decree is clear and unambiguous. Its meaning leaves no room for interpretation. While we seriously question the power and authority of the Supreme Court to change the effective date of any legislative act, we will adhere to a literal interpretation of the Resolution. Article 5 of Act No. 1205 not being applicable to the confession of a minor made before January 16, 1977, by virtue of the Supreme Court Resolution above, the appellant's confession was not inadmissible under this second statutory prohibition.
Thus the only issue remaining is the voluntariness of the confession itself. We have already stated that the confession of a minor is not ipso facto inadmissible. A number of courts have considered the question of the competency of a minor, without the guidance of a parent, attorney, or other friendly adult, to make an intelligent, understanding, and voluntary waiver of his constitutional rights.
"Most courts that have considered this question have concluded that there is no absolute requirement that a parent or attorney be present in order for a child to make an effective waiver, or, put another way, that a child is not presumed, for reasons of age alone, to be incapable of waiving his rights by himself. Rather, the effectiveness of the waiver is determined by examining the totality-of-the circumstances surrounding the giving of the statements, and some courts in using this approach have employed what amounts to a voluntariness test, rather than a literal application of Miranda." S. Davis, Rights of Juveniles: The Juvenile Justice System, 1974, p. 92.
Most of the decisions that examine the totality of the circumstances to determine the voluntariness of a minor's confession and waiver rely on Haley v. Ohio, 332 U.S. 596, 68 S.Ct. 302, 92 L.Ed. 224 (1948) and Gallegos v. Colorado, 370 U.S. 49, 82 S.Ct. 1209, 8 L.Ed.2d 325 (1962). The leading case so holding is People v. Lara, 67 Cal.2d 365, 62 Cal.Rptr. 586, 432 P.2d 202 (1967), cert. denied, 392 U.S. 945, 88 S.Ct. 2303, 20 L.Ed.2d 1407 (1968) wherein the California Supreme Court stated that:
"We cannot accept the suggestion of certain commentators . . . that every minor is incompetent as a matter of law to waive his constitutional rights to remain silent and to an attorney unless the waiver is consented to by an attorney or by a parent or guardian who has himself been advised of the minor's rights."
The court concluded that a minor has the capacity to make a voluntary confession even in a capital case, without the presence or consent of counsel or other responsible adult. The court said that the admissibility of such a confession depends not on age alone but with such other circumstances as his intelligence, education, experience, and ability to comprehend the meaning and effect of his statements.
In West v. United States, 399 F.2d 467 (5th Cir. 1968), the court set forth the circumstances to be considered in determining the validity of a minor's waiver of Miranda rights:

*935 "(1) age of the accused; (2) education of the accused; (3) knowledge of the accused as to both the substance of the charge, if any has been filed, and the nature of his rights to consult with an attorney and remain silent; (4) whether the accused is held incommunicado or allowed to consult with relatives, friends or an attorney; (5) whether the accused was interrogated before or after formal charges had been filed; (6) methods used in interrogation; (7) length of interrogations; (8) whether vel non the accused refused to voluntarily give statements on prior occasions; and (9) whether the accused had repudiated an extra judicial statement at a later date." 399 F.2d at 469.
It should be noted that in some of the cases employing a totality of the circumstances approach, the importance of a parent's presence in determining the effectiveness of a waiver of constitutional rights has been urged in the very strongest terms but not required.
A number of states now require the presence of a parent before an effective waiver can be found. See, e. g., Colo.Rev.Stat.Ann. § 19-2-102(3)(c)(I) (1974) (requires that warnings be given to both child and parent or legal custodian and requires presence of parent or legal custodian during any questioning); Conn.Gen.Stat.Ann. § 17-66d (1975) (identical to Colorado provision); Okla.Stat.Ann. Title 10, § 1109(a) (Supp.1973) (requires that warnings be given to both child and parent or legal custodian); N.M.Stat.Ann. § 13-14-25(A) (Supp.1973) (child cannot be questioned except in presence of parent or counsel). See also Freeman v. Wilcox, 119 Ga.App. 325, 167 S.E.2d 163 (1969); Lewis v. State, 259 Ind. 431, 288 N.E.2d 138 (1972). Alabama has no such requirement and, under the totality of the circumstances test, the absence of a parent is just one factor or circumstance to consider in determining voluntariness.
Using those criteria pronounced in West v. United States, supra, we now proceed to examine the totality of the circumstances under which the confession of the appellant was made.
1. The appellant was 15 years old when he made the confession.
2. The record does not reflect the education of the accused. We do know that he quit school but was still in school when he was twelve or thirteen. We also know that he could read at a fifth grade level and had an I.Q. of 87, some three points below normal. However, the mental subnormality of an accused does not in and of itself render his confession inadmissible. Elrod v. State, 281 Ala. 331, 202 So.2d 539 (1967). There is no evidence in the record which would indicate that his mental condition was such that he did not realize what he was doing when he confessed. See Bean v. State, 234 Md. 432, 199 A.2d 773 (1964) (confession of 15 year old with full scale I.Q. of 74 admissible). Detective Collier testified that the appellant stated he understood his rights. There was no testimony presented to contradict this.
3. The officers told the appellant and his mother what they wanted to discuss with the appellant. It appears that no charges were pending when the confession was made. If affirmatively appears that the accused was advised of his constitutional rights on at least three occasions. He stated he understood those rights and signed two printed waiver of rights forms on two separate occasions. The appellant did not testify either on the hearing to suppress or at trial. Therefore we have absolutely no reason to imply that he did not understand his constitutional rights.
4. There is no evidence that the accused was held incommunicado. Indeed it was a detective who filed the petition before the juvenile court. The mother of the appellant did testify that she requested to be allowed to go to the police station with her son. However this was contradictory of the testimony given by the two detectives. The finding of the trial court that the confession was voluntary was amply supported by the evidence. McNair v. State, 50 Ala.App. 465, 280 So.2d 171, cert. denied, 291 Ala. 789, 280 So.2d 177 *936 (1973). The controverted testimony for the defendant goes to the jury on its credibility. Godfrey v. State, Ala.App., 333 So.2d 182 (1976). There is nothing in the record to indicate that the appellant ever requested to see anyone or ever asked that the questioning be stopped. Seagroves v. State, 279 Ala. 621, 189 So.2d 137 (1965).
5. The appellant was interrogated before formal charges were filed.
6. From the record it does not appear that the police employed the "third degree", overt physical coercion or subtle psychological ploys. The officers did confront him with contradictions in his own story and conflicts between his testimony and what others had told them during their investigation. It is true that at least two of the three officers present in the room did accuse the appellant of lying and of having committed the murder himself. Detective Collier testified that he accused the appellant of lying and of having killed Mrs. Lott and told him that he would feel better about it if he told the truth and asked for forgiveness. The appellant then began crying and confessed. This was in no way an inducement. While the slightest menace or threat, or any hope engendered or encouraged that the suspect's case will be lightened, meliorated, or more favorably dealt with if he will confess, is enough to exclude a confession thereby superinduced, Womack v. State, 281 Ala. 499, 205 So.2d 579 (1967); Bass v. State, 55 Ala.App. 5, 312 So.2d 576 (1975) such factors were not present here. A policeman's advice or exhortation to an accused minor to "tell the truth" or that "it would be better to tell the truth", unaccompanied by threat or promise, does not render involuntary the minor's subsequent confession. People v. Robinson, 274 Cal.App.2d 514, 79 Cal.Rptr. 213 (1969). The appellant was the only individual who could contradict Detective Collier's testimony that his confession was not coerced, and he did not testify at all.
7. The appellant had been interrogated for forty-five minutes when he confessed.
8. At no time does it appear that the accused refused to give a voluntary statement or that he ever requested the presence of his mother during the questioning.
9. The appellant never repudiated the extra judicial statement at a later date. He never presented any evidence to even contradict the confession or its voluntariness.
We may summarize the above by stating that the evidence in this case simply does not compel the conclusion that the confession was involuntary. In reaching this decision this Court has been guided by Justice Douglas' remarks in Haley v. Ohio, 332 U.S. 596, 599, 68 S.Ct. 302, 92 L.Ed. 224 (1948), that special care must be employed in determining the admissibility of confessions and incriminating statements made by juveniles. Even when guided by such high standards we must deal only with the facts contained in the record before us. The totality of those facts and circumstances simply does not indicate that the confession was involuntary. In conclusion, it may be best to caution the overzealous police officer or prosecutor against a misinterpretation of this opinion. Had we found any indication that the appellant sought to exercise his privilege against self-incrimination or requested the assistance of counsel or parents, we would have reversed his present conviction without hesitation. In re Gault, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967).
Having thoroughly reviewed the record and finding no error, this court is of the opinion that the judgment of conviction is due to be and is hereby affirmed.
APPLICATION FOR REHEARING GRANTED;
AFFIRMED.
TYSON, P. J., and DeCARLO, J., concur.
HARRIS, J., concurs in result.
BOOKOUT, J., dissents.
TYSON, Presiding Judge, concurring.
I concur in the foregoing opinion as prepared by my brother, Judge BOWEN.
*937 Because the Supreme Court of Alabama in Pendleton v. State, 295 Ala. 325, 329 So.2d 142; also Pendleton v. State, 295 Ala. 327, 329 So.2d 144, suspended the operation of old Rule 18, and gave immediate effect to Rule 10(f), ARAP; and also because the Supreme Court of Alabama in Carter v. State, Ala., 339 So.2d 592, suspended the rules applicable to the timely perfecting of a habeas corpus appeal and directed consideration on its merits, I believe that Judge Bowen has correctly set forth the law applicable to the effective date of Article 5 of Act No. 1205, Acts of Alabama 1975, approved October 10, 1975.
BOOKOUT, Judge, dissenting:
The resolution of the Alabama Supreme Court of December 1, 1975, appears to delay the effective date of Article 5 of Act 1205, Acts of Alabama 1975, approved October 10, 1975. I use the word "appears" because I do not think the Supreme Court intended to, nor could, change the effective date of a section of Article 5 which does not depend upon adoption of administrative or procedural rules for its effectiveness.
The Supreme Court Resolution in question cites as its authority, Article 6, § 150, Constitution of Alabama (Article VI, Section 6.11, ratified December 27, 1973), and Act 1205 itself (presumably Sections 6-102, 6-105). The rule making power of the Supreme Court as set out in Article 6, § 150, supra, is as follows:
"The supreme court shall make and promulgate rules governing the administration of all courts and rules governing practice and procedure in all courts; provided, however, that such rules shall not abridge, enlarge or modify the substantive right of any party nor affect the jurisdiction of circuit and district courts or venue of actions therein; and provided, further, that the right of trial by jury as at common law and declared by Section 11 of the Constitution of Alabama 1901 shall be preserved to the parties inviolate. These rules may be changed by a general act of statewide application." Such power is limited to making rules governing (1) the administration of all courts, and (2) practice and procedure in all courts.
Section 5-125 of Act 1205, supra, prohibits the use of a statement of a "child" from being used in evidence against him in a criminal proceeding prior to conviction. That section is clear and unambiguous. Its implementation or effectiveness does not depend upon any rule governing administration or practice and procedure. Section 5-125 is completely severable from all other parts of the Act pursuant to Section 18-101 of that Act.
The effective dates of various articles and sections of Act 1205 are set out in Section 18-103. Except for those sections therein enumerated, the effective date of Act 1205 was October 10, 1975. It is reasonable to conclude that those sections of Act 1205 which depend upon rules of administration and procedure for their effectiveness could not be operable until such rules were established. However, I do not think the Supreme Court ever intended that their order of December 1, 1975, would allow confessions of children to be admissible until January 16, 1977, when the Legislature of Alabama clearly prohibited the admissibility of such confessions in criminal courts beginning October 10, 1975. This question will no doubt be considered by the Supreme Court on certiorari which is likely to follow. However, until that Court rules squarely on this issue to the contrary, I hold to the view that the confession was improperly admitted in contravention of the legislative prohibition of Section 5-125, supra. I, therefore, respectfully dissent.