### 39519. HOWE v. THE STATE.

WELTNER, Justice.

Tony L. Howe, a minor, shot and killed Millie Brown with a handgun. He was convicted of malice murder and sentenced to life imprisonment. He enumerates as error the admission into evidence of an incriminating statement made by him while in police custody, and the decision of the trial court not to give a jury charge on voluntary manslaughter.

1. We have treated comprehensively the first issue in *Riley v. State,* 237 Ga. 124, 127-8 (226 SE2d 922) (1976), and *Crawford v. State,* 240 Ga. 321 (1) (240 SE2d 824) (1977).

"Unlike a plea of guilty, a confession is not conclusive in a criminal case. 'All admissions shall be scanned with care, and confession of guilt shall be received with great caution. A confession alone, uncorroborated by any other evidence, shall not justify a conviction.' Code § 38-420.

"Confessions of juveniles are scanned with more care and received with greater caution. In *Freeman v. Wilcox,* 119 Ga. App. 325, 329 (167 SE2d 163) (1969), the Court of Appeals held that although a juvenile confessed after being advised of his right to counsel, his confession was inadmissible because his mother was not advised as to her son's right to counsel.

"This court, in *Riley v. State,* 237 Ga. 124, 128 (226 SE2d 922) (1976), disapproved *Freeman v. Wilcox,* supra, to the extent that it required automatic exclusion of a juvenile's confession if a parent was not advised of the juvenile's right to counsel. Instead, this court in *Riley,* supra, adopted a totality of the circumstances test, saying (237 Ga. at 128): '. . .the question of a voluntary and knowing waiver depends on the totality of the circumstances and the state has a heavy burden in showing that the juvenile did understand and waive his rights.'

"The court in *Riley* then set forth several of the factors to be considered among the totality of the circumstances in determining whether the juvenile's waiver of counsel was made knowingly and voluntarily, as follows (237 Ga. at 128): '(1) age of the accused; (2) education of the accused; (3) knowledge of the accused as to both the substance of the charge . . . and the nature of his rights to consult with an attorney and remain silent; (4) whether the accused is held incommunicado or allowed to consult with relatives, friends or an attorney; (5) whether the accused was interrogated before or after formal charges had been filed; (6) methods used in interrogations; (7) length of interrogations; (8) whether vel non the accused refused to voluntarily give statements on prior occasions; and (9) whether the accused has repudiated an extra judicial statement at a later date.'" *Crawford v. State,* supra, at pp. 323-4.

(1) Howe was sixteen at the time of his arrest.

(2) He had completed the ninth grade and was able to read and write.

(3) Howe was arrested at approximately 8:30 a.m., a short time after the homicide of which he was convicted. The victim died around noon, and questioning of Howe began at about 1:00 p.m., at which time police officers were not aware of the death. Thus, Howe originally was told that he was being questioned about the "shooting" of Millie Brown. Howe had already admitted responsibility for the shooting when, during the course of the interview, it was learned that the victim had died. At that time, prior to the signing of a written statement, Howe was informed that the victim had died and that he would be treated as an adult and charged with murder.

Howe's rights were read to him prior to the interview and he signed a written waiver. A juvenile officer had been called and was

present, in his own words, to ". . . make sure the rights of the juvenile [were observed]." Although Howe had been drinking during the night, there was an interval of at least four hours between arrest and questioning.

(4) Howe's mother arrived after he had admitted shooting the victim but before the written statement was signed. She was allowed to see him immediately, but was not advised as to his right to counsel. According to the interrogating officer, she simply told her son to tell the truth. She remained with Howe during the rest of the interview and the signing of the written statement.

A juvenile officer was called and was present during the interview, although he did not remain in the same room at all times. See OCGA § 15-11-19 (a) (3) (Code Ann. § 24A-1402). Howe allegedly waived the right to have an attorney present during questioning.

(5) Formal charges were filed after questioning.

(6) Two officers conducted the interview, with the juvenile officer present most of the time. It is not contended that the methods of interrogation were unusual or oppressive.

(7) The written statement was signed at 2:25 p.m., after approximately 1-1/2 hours of questioning.

(8) Howe was cooperative and never denied the shooting or refused to be interviewed. There is no evidence that Howe had been interrogated before or had any experience in such matters.

(9) Howe never repudiated the statement, although his in-court testimony included additional details which tended to show provocation.

The trial court held a Jackson-Denno hearing and concluded that Howe's statement was freely and voluntarily given, with complete understanding, and without threats of violence or fear of injury or promises of leniency or reward. Based upon the totality of the circumstances, as reflected in the nine-factor analysis, we conclude that the state met its "heavy burden" under *Crawford,* supra, and Howe's statement was properly admitted into evidence.

2. Howe contends that the trial court erred in not instructing the jury as to the lesser included offense of voluntary manslaughter. Absent a written request for a charge on a lesser included offense, made at or before the close of the evidence, the failure to so charge is not error. *State v. Stonaker,* 236 Ga. 1 (222 SE2d 354) (1976).

Howe alleges that, at the close of the evidence, a conference was held in chambers, at which the trial court announced that no case for manslaughter had been made and no charge would be given. Howe acknowledges that no written request was ever made, but urges that the following oral objection, made after the charge to the jury, was sufficient to preserve the issue for appeal:

"[DEFENSE COUNSEL]: Your Honor, I object to his Honor not charging on the offense of voluntary manslaughter.

"THE COURT: I want the record to reflect he didn't request it, you didn't give it to me.

"[DEFENSE COUNSEL]: Yes, sir, I understand; you told me you weren't going to charge it anyway."

It is clear from the transcript, therefore, that in declining to give the charge the trial court relied, at least in part, on the failure of the accused to request the charge. There is nothing in the record or transcript to support Howe's contention that a prior ruling of the trial court relieved him of the duty of making a written request in order to preserve the issue on appeal. Where the transcript or record does not fully disclose what transpired at trial, the burden is on the complaining party to have the record completed at the trial court under the provisions of OCGA § 5-6-41 (f) (Code Ann. § 6-805). When this is not done, there is nothing for the appellate court to review. *Zachary v. State,* 245 Ga. 2, 4 (262 SE2d 779) (1980).

*Judgment affirmed. All the Justices concur.*

DECIDED APRIL 5, 1983.

*Jerry W. Loftin,* for appellant.

*Arthur E. Mallory III, District Attorney, James M. Garcia, Assistant District Attorney, Michael J. Bowers, Attorney General,* for appellee.